SOPHRONIA PARKER *versus* JOSEPH MARSTON, 2d.

If a promissory note be given and delivered by the payee to a third person, because the donee expects soon to die of the disorder then upon him, it is revocable at any time during the donor's life ; and the same may be afterwards given to any other person.

Where the plaintiff claimed such note under a gift made by the donor two days before his death, and the defendant claimed the same under a gift from the same person, made seven days prior to his decease, the declarations of the donor, — made, as well as the gifts under which the parties claimed, during the sickness of which he died, prior to the time of the gift under which the defendant claimed, and within two months next before the death of the donor, — tending to show that his intention was to give this note to the plaintiff, and to give to the defendant other articles, were held to be inadmissible in evidence, on motion of the plaintiff.

EXCEPTIONS from the district court, REDINGTON J. presiding.

" This is an action of trover, for a promissory note, made by one David Parker and payable to one Betsey Parker. The verdict was for the plaintiff. The writ, together with certain questions propounded by the Court and answered by the jury, and also the note aforesaid, are to be copied and made a part of this case. The plaintiff claimed to hold the note by gift from Betsey Parker, made during the sickness which terminated in her death, and about two days before that event, for services, &c. rendered. The note was not indorsed by Betsey Parker. Betsey died March first, 1837.

" The defendant introduced testimony, tending to prove, that during her sickness, which was the consumption, and which had been long continued and of which she was then low, and seven days before her decease, Betsey gave the note aforesaid, to one Mary Ann Parker, a sister of the plaintiff, for her use and benefit, as a present, and delivered the same to her. And it was also proved, that Mary Ann Parker sold the note, a short time before this action was brought, to Thomas Parker ;

and by him, it was sold to the defendant, upon whom a demand was made before this action was brought. The defendant contended, that if the jury believed this note to have been given seven days before the decease of Betsey to Mary Ann, as aforesaid, it was a gift *inter vivos* and irrevocable.

" The plaintiff introduced testimony tending to prove the note, to have been given as aforesaid, to the plaintiff, two days before her decease, and that the same was delivered by Betsey to the plaintiff, at the same time, Mary Ann knowing of this last gift to Sophronia and not objecting to the same.

" The plaintiff called witnesses to prove that, during the last sickness of Betsey, and in the months of January and February before her death, she declared several times, during said months, that her intention was to give the note to plaintiff, and to give Mary Ann other articles, which she named. To the introduction of which testimony, the defendant objected, and the Court ruled the testimony to be admissible.

" The plaintiff accordingly proved by witnesses, such declarations of Betsey Parker, made during her sickness, and made on several occasions, during the months of January and February before her decease, which took place from said disorder, on the first of March, succeeding.

" The Judge charged the jury, that if they believed, that Betsey Parker gave and delivered the note to Mary Ann Parker, seven days before her decease, and that the gift was made not because of her expecting soon to die, it was a gift irrevocable. But that if they found the gift made to Mary Ann, because the donor expected soon to die of the disorder then upon her, it was revocable by Betsey at any time during her life ; and said Betsey, on regaining the possession of the note, might give or convey the same to Sophronia, or any one else.

" To which ruling and instruction of the Court, the defendant excepts and prays his exceptions may be allowed."

No copy of the papers referred to in the exceptions, came into the hands of the Reporter.

*Noyes*, for the defendant.

But there is one question, if not two, upon the decision of

which the defendant expects the exceptions to be sustained and a new trial to be granted to him. And it is this: —

Was it admissible, in order to show a revocation of the gift of the note in controversy to Mary Ann Parker, and a subsequent gift to the plaintiff, to prove the declarations of the payee of the note as stated in the bill of exceptions, made a month or more before the gift alleged to have been made to the plaintiff, and before her decease, as to the disposition she intended to make of that note ?

It will be seen, from the facts stated in the bill of exceptions, that the plaintiff contended and attempted to prove, that the note was given to her after it was given to Mary Ann, the gift to whom having been revoked, and that she had never parted with her title to it. It was incumbent upon the plaintiff to satisfy the jury of these facts in order to sustain her action.. *The jury have found as a fact that there was a gift to Mary Ann,* of the note. There was much conflict of testimony respecting the gift to the plaintiff, and she found it necessary in the course of the trial, in order to satisfy the jury of the fact of the gift to her, to call in aid the declarations of Betsey Parker, above alluded to.

These are declarations of one, who, if she had been living, could have been a witness in the case. And the Court say, in *Carle* v. *White,* 9 Greenl. 104, "it is a sound principle, that the sayings and declarations of one, who is a competent witness in a cause, are not to be admitted in evidence to charge another, upon the ground that they are but hearsay evidence." " Hearsay evidence," says Professor Greenleaf, " denotes that kind of evidence, which does not derive its value solely from the credit to be given to the witness himself, but also in part on the veracity and competency of some other person." 1 Greenl. Ev. § 99.

The object of the plaintiff. in proving these declarations, was to show the *intentions* of Betsey to perform the act which she contended was performed many weeks after, to wit, the gift to her. The proof of the reality and existence of those intentions did not depend alone upon the veracity of the witness

upon the stand, but also upon the honesty and candor of Betsey herself. The evidence then comes clearly within the definition of hearsay evidence, and is inadmissible.

Nor can their admissibility be maintained on the ground of their being *res gestae.* The surrounding circumstances, or *res gestae*, may always be shown to the jury along with the *principal fact.* The principal points of attention are, whether the circumstances and declarations offered, were contemporaneous with the main fact under consideration, and whether they are so connected with it as to illustrate its character. 1 Greenl. Ev. § 108. How can these declarations be considered *res gestae*, and admissible as such. There was no act done at the time they were made, which they tended to give character to, or illustrate. The principal fact did not take place, until weeks after; and in the mean time the intentions of Betsey, seem to have changed, for the jury have found that she gave the note to Mary Ann, under whom the defendant claims, and who, for any thing that appears, held the note from the decease of Betsey until she sold it to Thomas Parker. Any declarations made by Betsey, when she passed the note by delivery to any one, would come within the principle laid down as above.

It is like the case of *Merrill* v. *Sawyer & al.* 5 Pick. 397, where the Court exclude the declarations offered, and say, "he was doing no act which indicated that he had attached and was keeping hay, and of course the declarations could not be considered a part of any act." These were the declarations of a party, made too, before any controversy had arisen, and because there was no *principal* act done at the time they were excluded. If the declarations of a party would, under such circumstances, be excluded, the declarations of a third person, it would seem, ought to share no better fate.

In the case of *Greene* v. *Harriman*, 14 Maine R. 32, the declarations of a third person, *who could not be procured as a witness*, were excluded, because they did not accompany any *principal act*, which could illustrate or give character to it.

The other question, which the case presents, is simply, whether

a *donatio causa mortis* is revocable during the life of the donor, if he does not recover of the disease then upon him, or escape the impending peril.

That question has not arisen in this State for decision, or in Massachusetts, though in the latter State, in the case, *Grover* v. *Grover*, 24 Pick. and in *Parish* v. *Stone*, 14 Pick. there are *dicta* of the Courts, which seem to be unfavorable to the views which the defendant entertains with respect to this question.

The Court, however, in the latter case say, " if he (the donor) recovers from the sickness or other cause of apprehended death, under which the donation is made, the gift is void."— Kent, in describing this species of transfer says, " it is essential that the donor make them in his last illness, or in contemplation and expectation of death ; and if he recovers, the gift becomes void."

The transfer is supposed to be made, when a more formal mode of conveying it could not be effected. When the peril and the prospect of death were imminent, and if death ensues from the disease then upon the donor, or if he does not escape the peril, the gift is perfect. There is no revocation about it. The donor, by the delivery of the property, intends to indicate to whom his property shall go, if he does not recover, or in other words, he (the donor) intends to constitute the individual, to whom he passes the property, his heir as to that property. Justinian, Lib. 7. In *Jones* v. *Selby*, Prec. Chan. 304, it is expressly decided, that such gift cannot be revoked by the will of the grantor. A similar principle is recognized in the case of *Hambrooke* v. *Simmonds*, 3 Russ. 25.

*Moor*, for the plaintiff.

That the promissory note of a third person may be the subject of a donation " *causa mortis*" is no longer a matter of controversy. *Borneman* v. *Sidlinger*, 15 Maine R, 429 ; *Parish* v. *Stone*, 14 Pick. 198 ; *Grover* v. *Grover*, 24 Pick. 261. And the ruling of the Court, that such a gift is revoca-

ble is relied upon by the counsel for the defendant as one of the reasons why the verdict for the plaintiff should be set aside.

A brief examination of this point will satisfy the Court that upon principle, as well as authority, the ruling of the Court below was correct.

A donation " *causa mortis*" is a volutary gift without consideration, which must be accompanied by the delivery of the subject of the gift; and in case of the recovery of the donor it is void. In its effect it is a verbal bequest or unwritten will, and like a written will must be subject to the revocation of the donor whilst living. It bestows only an imperfect and inchoate right upon the donee until the death of the donor. It looks to the future and is to operate only at a future contingent time, subject always to the will of the donor until his death. And to hold that a gift *causa mortis* is irrevocable, is to abolish the chief distinction between that kind of gift, and a gift *inter vivos*. That such a gift is revocable is clearly laid down in 2 Kent, 444 & 445, where the civil law rule is examined and asserted to be the same. The cases of *Parish* v. *Stone*, 14 Pick. 204, and *Grover* v. *Grover*, 24 Pick. 265, are also in point. And so are ———————— v. *Markham*, 7 Taunt. 230 and *Weston* v. *Hight*, 17 Maine R. 287.

But the facts of this case show, that there was not only a revocation, but a new gift also made by Betsey to Sophronia, in presence of Mary Ann, she knowing of the gift, and not objecting to it; and this gift was a gift *inter vivos* and for valuable considerations, and irrevocable.

The counsel for the defence also contends, that the Court erred in permitting the plaintiff to prove the declarations of Betsey Parker, evincing her intention to give this note to the plaintiff, made in January and February, before her decease, which occurred the first day of March following, — said declarations being made during her last sickness.

Were those declarations properly admitted?

It is believed, that both upon principle and authority, they were so. — The ground of objection, raised by counsel is, that

they were not a part of the "*res gestae*," being made so long before the gift; — and that the declarations of the donor, can only be admissible, when they accompany the act and are a part of the *res gestae*. This latter proposition is denied, as unsound. And the former seems to involve a question of fact, which the counsel has overlooked.

Were not those declarations a part of the *res gestae*?

A definition of this term is given by Mr. Greenleaf on Evidence, vol. 1, page 119, viz. "Declarations connected with the principal fact under investigation." The fact under consideration was, the gift of the note to Sophronia, either as a donation *causa mortis* or *inter vivos*.

What are the essential requisites to a donation *causa mortis*?

The donor should be in her last sickness, (which has a fatal termination,) she should, by word or deed, manifest an intent to give, and she should deliver the subject of the donation to the donee. The facts in this case show, that the donor was in her last sickness, and during it, she declared an intention of giving this note to Sophronia, and, the day before the termination of that sickness, she gave it to her. Can it be said that the declarations thus made, are not explanatory of the act of delivery, of the subject of the donation, and therefore a part of the *res gestae*? Other declarations made at the time of the gift, might qualify such declarations so made. Yet these are not the less admissible.

But it is contended that these declarations are admissible on other principles, and not merely as a part of the *res gestae*, but as independent testimony. In one American decision, at least, *McClewley* v. *Lockhart*, 1 Bailey's Reports, page 467, the Court hold, that a mere declaration by the alleged donor of the intention to give, and possession by the donee, authorize a jury to presume a gift.

The defendant claimed title to the note by gift from the same donor. To prove that gift, her declarations accompanying the alleged act of delivery were relied upon. To repel the force of this testimony, it was the right of the plaintiff, to show any act, fact, *or other declaration* of the donor tending

to show the contrary. And what fact would be more proper and pertinent in deciding this point than the declarations of the donor ?

These declarations were admissible on the further ground, that they were from the party under whom the defendant, as well as the plaintiff, claimed title to the note, made when she was the owner of the note, and made before the right of either of the parties to this controversy attached.

They are like the declarations of a payee of a note, transferred after it is overdue, which are admissible in evidence in an action between the indorsee and maker. 15 Pick. 92, *Sylvester* v. *Copp.* So where a grant or sale is contested for fraud, the declarations of the grantor, are admissible. *Foster* v. *Hall*, 12 Pick. 89; *Davis* v. *Spooner*, 3 Pick. 284; *Hale* v. *Smith*, 6 Maine R. 416; *Dale* v. *Gower*, 24 Maine R. 563; *Shirley* v. *Todd*, 9 Maine R. 83; *Hatch* v. *Dennis*, 1 Fairf. 244; *Whittier* v. *Vose*, 16 Maine R. 403.

The above cases show that the declarations of the holder of a note, which is indorsed after its dishonor, may be received in evidence to show payments, or sustain a defence, when an action is brought in the name of an indorsee. For a much stronger reason should they be received in the case at bar.

In the cases referred to, the evidence goes to the life of the contract and tends to defeat it. In the case at bar, the evidence tends only to show who is entitled to the benefit of the contract, and not to discharge it.

The opinion of the Court was drawn up by

TENNEY J. — The Judge instructed the jury, that if the note was given and delivered to Mary Ann Parker, because the donor expected soon to die of the disorder then upon her, it was revocable at any time during the donor's life, and the same could be afterwards given to the plaintiff, or to any other. This instruction was undoubtedly correct. It is laid down by elementary writers of the present day, that such gifts are inchoate, and are not perfected till the death of the donor; they are revocable by the donor during his life. " They are

properly gifts of personal property by a party, who is in peril of death, upon condition, that they shall presently belong to the donee, in case the donor shall die, and not otherwise. To give them effect, there must be a delivery of them by the donor, and they are subject to be defeated, by his subsequent personal revocation, or by his recovery or escape from the impending peril." Story's Eq. Jur. § 606; *Parish* v. *Stone*, 14 Pick. 198.

A promissory note, made by a third person, is a proper subject of such a gift. *Borneman* v. *Sidlinger*, 15 Maine R. 429, and 21 Maine R. 185.

It appears from the case, that the plaintiff relied upon a gift and delivery of the note to her two days before the death of the donor. The defendant introduced evidence of a gift to Mary Ann, seven days before the death, accompanied with delivery. The jury have found a gift to Mary Ann, at the time stated, *causa mortis ;* and a revocation of that gift and a subsequent one to the plaintiff, *inter vivos.* The plaintiff was permitted to introduce the declarations of the donor, made during a space of two months preceding her death, to show her intention to give the note to the plaintiff. This was objected to, and it is now insisted that the evidence was inadmissible.

The ruling of the Judge upon this point is attempted to be sustained on several grounds. — 1. That as the defendant claimed title to the note under a previous gift, and relied upon the acts and declarations of the donor at the time, these previous declarations were competent to repel the force of those relied upon by the defendant. An intention on the part of the donor, at an earlier period of her sickness, to give the note to the plaintiff, imposed upon her no obligation to do so; she had a right to change that intention at any time, and for reasons satisfactory to herself alone ; and in making the change she did no more than what is believed to be common in like circumstances. The declarations did not tend in the least, to show that she did not subsequently express different intentions;

different intentions at different times could be entertained without any inconsistency.

2. Again, it is contended, that these declarations are admissible on the ground, that they were made by the person, under whom both parties claim, while she was the owner of the note, and her situation is regarded similar to that of the payee of a note, transferred after its maturity, whose declarations are admissible, in an action between the indorsee and the maker, made while he was the owner ; or to that of the vendor, in a sale of property alleged to be fraudulent, whose declarations are also competent. In both the cases put by way of illustration, the declarations are in the nature of the confession of facts, the existence of which at the time are supposed to be adverse to the interest of the party making them. In the case at bar the declarations cannot be so treated ; the note was hers ; she could dispose of it as she pleased, without being subject to the complaint of any one ; no person had by virtue of those declarations, even an inchoate right or interest in it ; the intention alone, to do one thing or another in reference to the note, however fully and clearly expressed, was entirely nugatory.

3. But the ground mostly relied upon for their admissibility is, that the declarations were a part of the *res gestae,* that they were connected with, and gave character to, the act of gift to the plaintiff. Surrounding circumstances may always be shown to a jury, with the principal fact, "and their admissibility is to be determined by the Judge, according to the degree of their relation to that fact and in the exercise of his sound discretion." "The principal points of attention are, whether the circumstances and declarations offered in proof, were cotemporaneous with the main fact under consideration, and whether they were so connected with it, as to illustrate its character." 1 Greenl. Ev. § 108. Declarations, to become a part of the *res gestae,* "must have been made at the time of the act done, which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize

Parker *v.* Marston.

with them, as obviously to constitute one transaction." *Enos* v. *Tuttle,* 3 Conn. R. 250.

It is often a nice question to determine satisfactorily, what declarations do make a part of the *res gestae;* and how near in point of time they must be to the principal act, to render them a part of it. It may be, that statements are made anterior to the transaction, which are clearly connected therewith, and give it character ; but something must be presented to show the connection ; if not, declarations made a considerable time before, are inadmissible.

No question is made, that if nothing had taken place after the gift *causa mortis,* to Mary Ann, it would have been perfected in her by the death of the donor. But the plaintiff relied upon evidence of a revocation of that gift, and a subsequent one to her. By the last transaction, her title arises. The declarations of the donor, made in January and February, were accompanied with no act ; and we have seen created no obligation on her part. All they show is, that the act two days before her death, was in harmony with the intention expressed long before ; but that alone is not sufficient to make them a part of the act, which was performed at that time. There was evidence, which satisfied the jury, that when she gave the note to Mary Ann, which was between the time when the declarations were made, and that when the note is claimed to have been given to the plaintiff, the intention to make the gift to the latter was abandoned entirely ; she could not have entertained those intentions, when she was actually making the gift of the same note to another. These declarations could not be evidence of a revocation of a gift which had not been made, and it is difficult to conceive how they could give character to the act, relied upon by the plaintiff as establishing her title, when they were severed from that act by a transaction, which clearly showed that those intentions had ceased to have any influence. *Exceptions sustained.*