ORLEANS COUNTY.—HON. ISAAC S. SIGNOR, SURROGATE.—January, 1887.

MATTER OF WIRT.

*In the matter of the estate of* HENRY J. WIRT, *deceased.*

Decedent, in pursuance of an ante-nuptial promise, but without other consideration, transferred a mortgage to his wife, by a written assignment, which provided that "the interest on said mortgage and the money thereby secured" were to belong to the assignor during his lifetime;

and delivered to her the mortgage and assignment, retaining the bond in his own possession. Upon her accounting, as executrix, the widow claimed title to the mortgage as donee.—

*Held,* that the transfer could only be sustained, if at all, as a gift *inter vivos;* and that it was invalid as such, by reason of the interest retained in the subject by decedent.

HEARING of objection to account of executrix of decedent's will, in proceedings for judicial settlement.

W. M. JONES, *for executrix.*

GEO. BULLARD, *for objectors.*

THE SURROGATE.—The accounting executrix is also the widow of the decedent. The legatees and beneficiaries, or a portion of them, seek to surcharge the account presented with the amount of a certain mortgage for $2,000, owned by the decedent during his lifetime, and certain other personal property. The widow claims that this mortgage was transferred to her by a written assignment by a delivery of the mortgage, without the bond, February 15th, 1883. It appears by the evidence that, before the marriage of the parties, which occurred January 30th, 1883, the decedent proposed that, on his marriage, he would give to his wife this mortgage as a bridal gift, to be used by her in religious and charitable work. For the purpose of carrying out this promise the parties went to the office of Mr. Bullard, and had the assignment drawn up in the usual form on the printed blank, but which contained, in addition to the usual provisions of an assignment, this clause : " The interest on said mortgage and the money thereby secured to belong to the said Henry J. Wirt during his lifetime." It also appears that the mortgage, and this assignment, after

execution, were delivered to Mrs. Wirt by her husband, and that no consideration was ever paid therefor.

The transfer, if sustained at all, must be sustained as a gift *inter vivos.* I should find no difficulty in doing this, were it not for the clause above quoted. The acceptance of the mortgage was an acceptance under and in accordance with the terms of the assignment—consequently with the reservations therein contained. The question remaining is one as to the legal effect of such a provision in a paper attempting to convey a mortgage as a gift. The gift is no more effective because the promise of the gift was reduced to writing ; the principles of law applicable are the same as if the transfer had been orally made and accompanied by an actual delivery.

An absolute gift requires a renunciation by the donor and acquisition by the donee of all the interest in and title to the subject of the gift. A portion cannot be retained and the remainder disposed of (Cary v. Powers, 17 *N. Y.,* 217 ; Irish v. Nutting, 47 *Barb.,* 383). In this case, the gift contains the express reservation, not only of the interest but of the principal so long as the donor shall live, and is practically only a gift to take effect at the death of the testator. It lacks all the important elements necessary to constitute a gift *causa mortis.* In Young v. Young (80 *N. Y.,* 432), it is said that, to establish a valid gift, the delivery of the subject of the gift to the donee or to some person for him, so as to divest the possession and title of the donor, must be shown ; but in that case the question is raised whether it is practicable to make a valid gift, *in præsenti,* of an instrument securing

the payment of money, and reserving to the donor the accruing interest, and it is said that perhaps it may be done by a written transfer delivered to the donee; but if the donor, where there is no written transfer, retains the instrument under his control, although he do so merely for the purpose of collecting the interest, there is an absence of the complete transfer which is essential to the validity of the gift. But, aside from the delivery, a written instrument is no stronger than a verbal gift (Rosenberg v. Rosenberg, 40 *Hun,* 91). The writing at most can only take the place of the delivery of the security, but must transfer all legal title of the property sought to be conveyed, and must vest the entire legal title, upon the transferred undertaking to account to the donor for the interest he may collect thereon (Young v. Young, *supra*).

The express provision of this assignment was that the legal title of both principal and interest shall not pass to the transferee during the lifetime of the donor, but should pass at his death. Parsons on Contracts, chap. 15th, § 1, 5th ed.) says: " If it (the gift) regards the future, it is but a promise without consideration and has no validity "; and in Rosenberg v. Rosenberg (40 *Hun,* 91), it is said: " any gift of chattels which expressly reserves the use of the property to the donor for a certain period or as long as the donor should live is ineffectual (Schouler on Personal Property, 118; Vars v. Hicks, 3 *Murphy* [*N. C.*], 494)." This rule has been applied when the gift is made by a written instrument or deed purporting to transfer the title but containing the reservation; but the case under consideration is even stronger, for here there

is an express reservation not only of the use but of the title, and notwithstanding the giving and the subsequent recording of the assignment containing the reservation.   I have no doubt it was in the power of the donor to resume possession of his property at any time, or to make any other disposition of it during his lifetime, and that failing so to do it would become assets of the estate.

It appears from the evidence that the bond was never delivered.   The assignment was, with the mortgage, placed in a box, to which both had access and in which they both kept their papers.   The testimony of Mrs. Wirt is that she did not see it after some time the next spring ; that she found he was unwilling that she should deliver the money to charitable purposes, and that without his knowledge she made an assignment to his son.   This assignment was made, and thereafter she told her husband what she had done, and he asked her if she had reserved the interest, and, on her replying that she had not, he expressed dissatisfaction at her failure so to do.   After this conversation, it appears that he took both the assignments away and left them with his counsel, where they remained up to the time of his death which occurred May 27th, 1885.   She also says that she discovered that it was gone the same spring that they had a conversation about the transfer to William, perhaps a month after this conversation.   She says that, some six weeks before the transfer to William, when she found that he was not willing that she should use it for charitable purposes, she asked what she should do with it, and he said she could assign it to William but

reserve the interest, and that he did not know of it at the time she did make the assignment.   If Mrs. Wirt acquired no title to the property by the transfer from her husband, she could transfer none to William.   She could transfer only what interest she had in his assignment which expressly provided that it was subject to the right of the testator to receive the interest thereon, and also stated that it was intended to convey the interest of Sophia Wirt as conveyed to her by Henry S. Wirt.

\*       \*       \*       \*       \*       \*       \*

A decree may be entered, surcharging the account with the amount of the mortgage, and otherwise allowing it as presented.