### WETMORE v. BROOKS.

(*Common Pleas of New York City and County, Equity Term.* December, 1891.)

1. GIFTS CAUSA MORTIS—WHEN VOID.
   Under Laws 1858, c. 314, declaring that every one who, in fraud of the creditors of a decedent, receives, or in any way interferes with, decedent's property, shall be liable to the executors or administrators for such property or its value, a gift *causa mortis* of all one's property is void if the donor has any debts.

2. SAME—GIFT ON CONDITION.
   To make a gift *causa mortis* valid, there must be a renunciation by the donor, and an acquisition by the donee, of all interest and title to the property intended to be given, and such gift is void when accompanied by the condition that part thereof be applied to the payment of the donor's debts.

Action by Mary T. Wetmore against Frances C. Brooks, administratrix. Judgment for defendant.

*Samuel Campbell,* for plaintiff.     *Wm. H. Sage,* for defendant.

BOOKSTAVER, J.     This action was originally brought by the plaintiff against the Bowery Savings Bank to recover the sum of $793.38 on deposit to the credit of Georgiana H. Williams, deceased, which she claimed as a gift *causa mortis* from Miss Williams. After her death the defendant applied for and obtained letters of administration, and thereafter, as such administratrix, made a demand upon the bank for the money; whereupon the bank obtained an order of interpleader, whereby the defendant was substituted as defendant in this action. The question to be determined is whether or not there was a valid gift to the plaintiff *causa mortis*. The deceased was the niece of the plaintiff, being the daughter of plaintiff's sister. The other next of kin were Grover E. Hurlburt, a maternal uncle; Harriet M. Goodrich, Maria Clark, Charlotte Genet, and Frances C. Brooks, the defendant herein, paternal aunts. Miss Williams had lived for a number of years in the same house with the plaintiff, but had paid her own rent, and owned the furniture in her rooms, together with some family pictures and two bank books, representing about $1,000. The Bowery Savings Bank book was in a trunk in her room. Where the other bank book was does not clearly appear from the evidence. The deceased had been ill about a week before the alleged gift was made, suffering from an intestinal obstruction. She died about 4 o'clock on a Sunday afternoon. On the evening before her death, at about 11 o'clock, the physician in attendance testified that she was very weak; that for some time she had been under the influence of morphine to alleviate her sufferings; that at that time she did not carry on any lengthy conversation, but, as a rule, merely answered questions put to her by saying "yes" or "no" in a very feeble voice. He further testified that he again called upon his patient about 8 o'clock on Sunday morning, and found her still weaker, and in about the same mental condition. The alleged gift is said to have been made about 4 o'clock on Sunday morning. One of the witnesses for the plaintiff testified that plaintiff came to the bed, and said, "You are very sick;" to which Miss Williams replied, "I am very sick, ain't I, Aunt Mary?" That plaintiff then said, "Yes, Georgie, you are very sick. Have you anything you would like to say?" The other witness testified that the plaintiff was sitting on the side of the bed when the deceased said to her, "Aunt Mary, I am very sick. Do you think I will get well?" To which the plaintiff replied, "No, Georgie; I don't

think you will. Is there anything you would like to say?"—thus showing that the plaintiff herself originated the conversation leading to the alleged gift. According to both witnesses, the plaintiff also suggested the different parts of that conversation, even asking her if she had any money left, and where her bank books were, etc. These two witnesses afterwards denied the alleged gift of the money to three witnesses who were produced on behalf of the defendant. Mrs. Aldrich, one of the witnesses for plaintiff, told them that she knew nothing about the gift, as she was in and out of the room all of the time, and did not hear all the conversation; and Mrs. Vail, the other witness, said to them that the deceased had said that Mrs. Wetmore was to sell the things and pay the expenses, telling them nothing about the bank books. Such statements by witnesses of the gift were held sufficient in the case of *Bick* v. *Reese*, (Sup.) 3 N. Y. Supp. 757, to uphold a verdict against the gift. It also appears that the plaintiff herself, several weeks after the death of Miss Williams, told Mr. Lyon, the undertaker, and Mr. Purdy, the landlord, that all the money deceased left was about $200, which she told Mr. Purdy was in the Seamen's Bank, and intimated to them that there would not be money enough to pay all the debts, as there was owing between $150 and $200 to the landlord for rent, and over $100 to the undertaker, besides the physician's and druggist's bills. Her position is therefore inconsistent, because she has brought an action claiming the money in the Seamen's Bank, which can only proceed upon the theory that it was a gift to her, whereas her statement to those witnesses that it was a part of the estate negatives the idea of any gift. Both Mrs. Aldrich and Mrs. Vail testified that the deceased said her bank books were in the trunk, while Mrs. Wetmore testified that there was only one book there. There is a material difference in the terms of the conversation given by these two witnesses relating to the alleged gift,—Mrs. Aldrich testifying that the deceased made the gift subject to the payment of her debts; the other one testifying that she heard nothing about paying the debts or expenses, and did not hear anything said about money. If Mrs. Aldrich is correct, the plaintiff only took part of the property, as creditors were to be paid, and she took the residue; whereas, if Mrs. Vail is correct, the plaintiff took the property entirely, and no provision was made for the debts. Gifts *causa mortis* are regarded with suspicion by the courts, and must be affirmatively shown by the clearest, strongest, and most unequivocal evidence. The ease with which frauds may be perpetrated has led to the adoption of this rule, ( *Van Fleet* v. *McCarn*, [Sup.] 2 N. Y. Supp. 675; *Halstead* v. *Sherrill*, 6 N. Y. St. Rep. 15; *Chalker* v. *Chalker*, 5 Redf. Sur. 480; *Grymes* v. *Hone*, 49 N. Y. 23; *Parkin* v. *Day*, 6 Wkly. Dig. 113; *Grey* v. *Grey*, 47 N. Y. 555; and many cases which might be cited,) and I do not think the plaintiff has fairly sustained the burden to which she is put in this case. Besides, the divergence in the testimony between the two witnesses as to that conversation makes it extremely difficult to say which is correct. If there was no provision for the payment of debts, then I think it is obnoxious to chapter 314, Laws 1858, which declares that "every person who shall, in fraud of the rights of creditors and others, have received, taken, or in any manner interfered with the estate, property, or effects of the deceased person, shall be liable in the proper action to the executors or administrators of such estate or property for the same, or the value of any property or effects so received or taken;" and in *Jones* v. *Jones*, 41 Hun, 163, that section was held to apply to a gift *causa mortis;* and although there was in that case a dissenting opinion by FOLLETT, J., the nature of the testimony in this case fully supplies the lack of evidence in *Jones* v. *Jones*, pointed out in the dissenting opinion. For it is clear that, if there was a gift at all, all the property belonging to the deceased was given to the plaintiff, and consequently there was nothing whatever left to pay her creditors, and the estate would be insolvent. In *Fox* v. *Moyer*, 54 N. Y. 131, it is said that a voluntary conveyance will only be "upheld by proof showing

that when made he retained an ample estate to pay all his debts." And the case of *Spotten* v. *Keeler*, 22 Abb. N. C. 106: "If a debtor may dispose of his property in the way it was done under the circumstances here shown to exist, and thus put his creditors at defiance, the law is of little avail to the latter by way of protection against injustice." If, on the other hand, the gift was made subject to the payment of debts, then it was not absolute. There was a condition annexed, to wit, that the debts must be paid. In order to make a valid gift *causa mortis*, there must be a "renunciation" by the donor, and an acquisition by the donee, of all interest in and title to the subject of the gift; part cannot be reserved, but all must be given. *Curry* v. *Powers*, 70 N. Y. 217; *In re O'Gara*, 15 N. Y. St. Rep. 739; *In re Wirt*, 5 Dem. Sur. 179. But, giving the testimony offered by the plaintiff the utmost credence, it scarcely makes out a case of a gift. The statements, "the rest is yours," and "do with them as you like," are, in my judgment, scarcely sufficient to uphold a gift. The words are too ambiguous to carry a clear indication of the intention of the deceased to part with title to the property. It may also be doubted whether the delivery was such as would be required to uphold a gift *causa mortis;* but it is unnecessary to give reasons for this at length, as I think I have given sufficient to justify the conclusion to which I have arrived. On the trial I permitted the physician to testify whether, in his opinion, the physical condition of the plaintiff was such that she would understand the nature of a gift of personal property; and also whether or not her condition was such that she could understand the nature of such an act as the giving away of money or furniture, etc. I had considerable doubt at the time whether these questions should have been allowed, and have not regarded the answers given by him at all in arriving at a conclusion in this case; and, if any appeal is taken, I think these answers should be stricken out of the case. The judgment should be in favor of the defendant, with costs.