KIRK et al. v. McCUSKER.

(Common Pleas of New York City and County, General Term. April 10, 1893.)

1. DONATIO CAUSA MORTIS—DELIVERY—VALIDITY.
    Transfer of possession and dominion of the thing given, and continuance of such possession and dominion in the donee, as against the donor, are indispensable conditions of a valid donatio causa mortis.
2. SAME—SUBSEQUENT APPROPRIATION BY DONOR.
    An appropriation by the donor, after the gift, of the thing given, shows either an ineffectual delivery or a revocation, and in either aspect is fatal to the validity of a donatio causa mortis.
3. SAME—CONTEMPLATION OF DEATH.
    It is indispensable to the validity of a gift causa mortis that it be made in contemplation of the death of the donor.

(Syllabus by the Court.)

Appeal from Equity Term.

Action by Thomas Kirk and another, administrators of Margaret Kirk, deceased, against Bridget McCusker, to recover certain assets alleged to belong to the estate of deceased. There was judgment for defendant, and plaintiffs appeal. Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

John McGinn, (Edward W. S. Johnson, of counsel,) for appellants. Peter Condon, for respondent.

PRYOR, J. "Sound policy requires that the law regulating gifts causa mortis should not be extended, and that the range of such gifts should not be enlarged." Earl, J., in Ridden v. Thrall, 125 N. Y. 572, 581, 26 N. E. Rep. 627. A gift imports, ex vi termini, a present transfer of the property, and an executory gift is a legal absurdity. 2 Kent, Comm. 438. Hence an intention to give, no matter how absolute and explicit, is merely nugatory; but, to a valid and effectual gift, delivery of the thing given, with the purpose and effect of passing the property as well as the possession, is an indispensable condition. Beaver v. Beaver, 117 N. Y. 421, 429, 22 N. E. Rep. 940; Young v. Young, 80 N. Y. 422; Jackson v.

Railroad Co., 88 N. Y. 520; Harris v. Clark, 3 N. Y. 93.  Such a delivery is as essential to a gift causa mortis as to a gift inter vivos. Ridden v. Thrall, 125 N. Y. 572, 579, 26 N. E. Rep. 627; Harris v. Clark, 3 N. Y. 93, 113; Gescheidt v. Drier, (Sup.) 20 N. Y. Supp. 11; Basket v. Hassell, 107 U. S. 602, 2 Sup. Ct. Rep. 415; Conklin v. Conklin, 20 Hun, 278; Turner v. Brown, 6 Hun, 331, 333; 2 Kent, Comm. (12th Ed.) marg. p. 448, note by Judge Holmes.  "There must be a renunciation by the donor, and an acquisition by the donee, of all interest in and title to the subject of the gift."  Wetmore v. Brooks, (Com. Pl. N. Y.) 18 N. Y. Supp. 852.  By a gift causa mortis "the title to the property passes from the donor to the donee at the time of delivery, defeasible only during the lifetime of the donor." 8 Amer & Eng. Enc. Law, 1352.  "To constitute a gift causa mortis, it is not only essential that delivery be complete, but possession must be retained by the donee until the donor's death.  If after delivery the donor again has possession, the gift is nugatory." Dunbar v. Dunbar, 80 Me. 152, 13 Atl. Rep. 578; Craig v. Craig, 3 Barb. Ch. 78.  "Death of the donor without revocation of the gift" is requisite to the validity of a donatio causa mortis.  Champney v. Blanchard, 39 N. Y. 111, 116.

The burden was upon the respondent to establish the gift she alleges against the apparent title of the appellants, and to establish it by clear and satisfactory proof.  Devlin v. Bank, 125 N. Y. 756, 26 N. E. Rep. 744; Wetmore v. Brooks, supra.  If the evidence be insufficient as to any fact indispensable in the constitution of a gift causa mortis, the judgment cannot stand; and we must so decide, however repugnant the conclusion to the inclination of the court.  Assuming what, however, is extremely questionable, that the doner never resumed possession of the bank books after their delivery to the respondent, the fact is uncontroverted that she subsequently appropriated to her own use a part of the very fund which is claimed to have been transferred to the donee by the alleged gift causa mortis.  By the instrumentality of those books, in the presence and with the concurrence of the respondent, she drew $600 from the bank, and applied it to her own personal use.  The alternative is inevitable,—that the donor never meant to part with the present possession and dominion of the thing given, or else that, in the exercise of her unquestionable right, she revoked the intended gift; and either inference is fatal to the validity of the donation.  By collecting and appropriating a portion of the fund which the delivery of the books is supposed to have destined to the donee, the donor unequivocally asserted possession and dominion of the thing given; asserted and exercised the jus disponendi in its utmost plenitude.  "There can be no gift, in law, if one exercises dominion over the subject of the gift." Dougherty v. Moore, (Md.) 18 Atl. Rep. 35.  "Redelivery of the subject of the gift to the donor revokes the gift." Wigle v. Wigle, 6 Watts, 522.  The donor's act of reclamation, in itself, would operate to nullify her original intention, if such there was, to pass possession and property; but, indeed, it is not clear that she ever meant to relinquish dominion of the subject of the contemplated gift.  The paper executed at the time of the transaction,

otherwise unimportant, contains the most authentic exposition of her purpose; and by that she says, "If anything happens, I leave all the money I have in the bank to Bridget McCusker." Here, beyond question, is not a gift in praesenti, defeasible upon a contingency, i. e. the recovery of the donor, but an inchoate gift suspended in operation and effect upon a future event, i. e. "if anything happens." In donatio causa mortis the condition is subsequent, and operates to defeat a title already vested, while here the condition is precedent, and intercepted the transfer of title until the something "happens." With this construction of the paper, the conduct of both donor and donee was in harmony. The donee, mindful of the wants of the donor, urged her to retain one of the books, so that she might draw money for probable exigencies; and the donor did draw from the fund she intended as a gift to the donee. If it be argued that as the money appropriated by the donor was drawn by two books, and from two banks, the deposit in the other bank is unaffected, we answer that the gift was by one act, and, if an integral fund, not by several acts, and in distinct parcels; that the same intention actuated and characterized the delivery of all the books; and that, by necessary consequence, if dominion was reserved as to the deposits in two banks, it was reserved as to all, or, if there was a revocation as to two, there was a revocation as to all the deposits.

But, for another and independent reason, this pretended gift is manifestly void. As its name imports, a gift causa mortis is made in contemplation of the death of the donor, and that it be so made is an indispensable condition of its validity. A gift upon any other contingency is not a donatio causa mortis. Now, the evidence utterly fails to show that it was an apprehension of death by the donor that prompted the delivery of the bank books to the defendant. True, Margaret Kirk was of infirm health; and true, also, it is, that on the occasion of the delivery of the books she said the doctor had told her she "was liable to go off at any time." But not for that did she deliver the books to the defendant. By the uncontroverted testimony,—the testimony of defendant's own witnesses,—another motive than the fear of death actuated the delivery of the books. Detailing the circumstances of the alleged donation, Peter Hughes testifies:

"As soon as I came in, she says: 'Well, Bridgie's employers have sent for her to go home. Now, you know about that letter that my sister sent me, saying Thomas Kirk would come on here, and carry out his intention to burn the house. Now, if Bridgie goes home, and he comes and burns the house, I want her to have her share. * * * If he comes on, why, Bridgie, you have got this money. He cannot touch it. You have got it.' * * * She said that, if anything happened to her while Miss McCusker was away, she would have something anyhow, if Thomas Kirk, her brother, should come here and do any damage. * * * She said that Miss McCusker would have this, if he would come on and do any damage."

Kate Gaughran testified:

"She said: 'I want to leave all the money in bank to Miss McCusker, in case anything should happen. * * * Well, if I don't see Bridget any more, I am glad I got her to take the bank books home with her.' "

What, then, is the inference from these repeated expressions of Margaret Kirk? That she delivered the bank books upon the contingency of her death, or in apprehension of the threat of Thomas Kirk to burn or tear down the house? That the latter was the event, and the only event, she had in mind, and intended to provide against, is manifest, beyond the possibility of rational dispute. Indeed, that Margaret Kirk was under no apprehension of imminent death is apparent, not only from the absence of satisfactory evidence to the contrary, but by the fact that, after the so-called "gift causa mortis," she busied herself about the details of domestic economy, and in making improvements and additions to her house. Mindful that the law regards gifts causa mortis with distrust, and exacts for their support clear and convincing proof, we are unable to find in the record sufficient evidence to uphold the judgment. Whatever our reprobation of the plaintiffs, and sympathy with the defendant, our decision must still be in conformity with the rules of law.

Judgment reversed, and new trial ordered, costs to abide event.

BISCHOFF, J., concurs in result.

DALY, C. J., (concurring.) The judgment appealed from will have to be reversed for error in the admission of testimony of the defendant concerning a transaction with the plaintiffs' intestate. The issue in the case was whether the deceased had personally delivered her bank books to the defendant, with the intention of making a gift to the latter of the money in the banks, and whether, thereafter, the donor had recovered possession of any of the books, and revoked the gift of the money, or any part of it. The defendant's witness Peter Hughes had testified to a transaction of February 12, 1892, between the deceased (Miss Kirk) and the defendant, in which the bank books were given to the latter; but he also testified that one of the books was handed back to Miss Kirk by defendant, who subsequently, after the death of Miss Kirk, took the book from the rooms of deceased. The defendant was then sworn on her own behalf, and was asked how long the three bank books had been in her possession. This was objected to by plaintiffs as within the prohibition of section 829 of the Code, but the objection was overruled, and the plaintiffs excepted. The defendant then answered, "Since the evening of February 12th of this year." A motion by plaintiffs to strike out the answer, as relating to a transaction with a deceased person, was denied, and exception taken. The materiality of this testimony of the defendant was that the personal transaction and communication between deceased and herself, as testified to by Hughes, might be inferred from it; and she thus testified indirectly to both such transaction and communication. "The fact she spoke of was in no just sense independent of, and extrinsic to, the personal transaction and communication, but derived its chief significance from its dependence upon, and intrinsic connection with, both." Viall v. Leavens, 39 Hun, 291. The case cited resembles the present closely, and is an authority di-

rectly in point; for there the witness testified to the possession of a deed, the delivery of which was in question. In Spicer v. Spicer, 54 N. Y. Super. Ct. Rep. 280, a defendant was asked how long a deed alleged to have been obtained from the deceased by fraud and undue influence had been in his possession. The evidence was admitted on the ground that "it may well have been that the deed was not delivered to the witness by the grantor personally." In the present case the proof of such personal delivery is the basis of the witness' claim to the possession of the books.

With respect to the merits of the case, it may be said that the decision of the trial judge might have been sustained is part, if not wholly, but for the error pointed out above. If the redelivery of the Bleecker Street Bank pass book could be construed as a rescission of the gift, and its retention by the donor as a revocation, then it should be deemed a rescission or revocation of the gift of the money deposited in that bank, and not of the moneys deposited in the other banks, the books of which were never delivered back to the deceased. But I do not think that the redelivery of the Bleecker Street Bank book affected the gift of the money in that bank, in any particular; for the deceased never drew any of the money, and the book was reluctantly received by her at the urgent solicitation of the donor, and as a provision for possible contingent needs only. Nothing in this transaction indicates the slightest desire or intention on the part of the deceased to take back what had been so freely given. With respect to the subsequent withdrawal of money from the Emigrant Savings Bank, which Hughes says the defendant told him "she got Mag to draw to send to her sister in Ireland," that money could only have been drawn on presentation of the book in defendant's possession, and it was so drawn in defendant's presence, both parties going to the bank together; and this withdrawal of the sum in question did not affect the ownership of the balance in the bank, the book being still retained by defendant. As to the original gift, all the constituents of the donatio causa mortis are found in the detailed transaction. The illness or ailment of the donor, from which she never recovered before her death, which took place within six weeks; the gift in praesenti of the bank books to the defendant, which is a delivery of the sums credited therein, (Ridden v. Thrall, 125 N. Y. 572, 26 N. E. Rep. 627; Walsh v. Bank, [Com. Pl. N. Y.] 7 N. Y. Supp. 669, and 8 N. Y. Supp. 344; Penfield v. Thayer, 2 E. D. Smith, 305;) the words which accompanied the gift, "There is your fortune for you," together with the whole conversation,—make out a case beyond even a reasonable doubt. The written paper, which at the time of the gift the deceased caused to be drawn up, and which she signed, "I, Margaret Kirk, if anything happens, I leave all the money I have in the bank to Bridget McCusker," confirms the gift. The contingency therein expressed referred to her death. She told them that the doctor told her that the sickness would take her off at any time. If she had apprehensions about her brother coming from Ireland, they must have related to his coming after her death, for his coming during her lifetime would not affect defendant's prospects of getting "her

share." Nor does the contingency mentióned in the paper indicate that the gift was not to take effect immediately. The paper tersely expressed what the law implied in a gift causa mortis. "Such gifts are inchoate, and not perfected until the death of the donor." Parker v. Marston, 27 Me. 196, 203. "Such a gift does not become perfect till the death of the donor." Parish v. Stone, 14 Pick. 198, 203. "A donatio causa mortis does not pass a title immediately, but it is only to take effect on the death of the donor." Grover v. Grover, 24 Pick. 261, 266. The very terms of the paper signed by the deceased are singularly like the declaration of the donor in Williams v. Guile, 117 N. Y. 343, 348, 22 N. E. Rep. 1071, "if anything happened to him, he should hand it [the policy and assignment] to Mrs. Guile," and upon these words the gift causa mortis was upheld. What Mrs. Kirk understood by the paper is plain enough. The witness Hughes said to her, "If you want to leave the money, why don't you go down to the bank, and give it to Bridget," and she said "that would do just as well," referring to the paper. This expression, with the delivery of the bank books, indicated that the witness understood that the disposition she had made was equivalent to drawing the money out of the bank, and giving it to her niece. What room is there for doubt as to her intention? There was evidence that Mrs. Kirk was entirely solvent at the time of her gift, and retained sufficient property to pay her debts, and the gift cannot be attacked on the ground suggested by appellants, and claimed to be supported by Fox v. Moyer, 54 N. Y. 131. The judgment, however, must be reversed for error in the admission of the testimony of defendant, as above stated.

Judgment reversed, and new trial ordered; costs to abide event.