In the Matter of the Estate of JOSEPH D. REARDON, Deceased.

Surrogate's Court, New York County, December 10, 1940.

*Abraham R. Kirshon,* for the administrator, petitioner.

*Austin & DuPont* [*Stephen J. Masse* of counsel], for the respondent.

DELEHANTY, S. In this discovery proceeding the sole question presented by the pleadings as amplified by the bill of particulars of respondent was whether or not deceased made a gift *causa mortis* to respondent of the property in controversy which consists of several savings bank books and a number of securities of substantial

value. At the close of the case for respondent, on whom rested the burden of establishing the alleged gift, a motion to dismiss the claim of gift was made. That motion was granted and the property adjudged to be the property of the estate of deceased. The proof presented raised no issue which required submission to the jury.

Deceased was a school principal in the employ of the board of education of the city of New York. He lived a restricted life as matter of choice. It was part of his scheme of existence to spend a minimum upon himself. His expenditures were consistent neither with his capital resources nor with the current income which he enjoyed. According to the proof he was happy in his association with respondent and the latter's wife and, at minimum cost, took advantage of the hospitality which they extended to him in their summer home. He undoubtedly led them to have expectations of benefit in some undefined, though probably testamentary, way by reason of their kindnesses to him. In the spring of 1940 he had a cerebral hemorrhage while engaged in his school work and after a period of hospital treatment was brought to the home of respondent on the shore of Long Island on June 12, 1940. There he recuperated and after grudging acceptance of the attentions of a local physician until July 17, 1940, he discharged his physician because he did not want further to have the expense of medical care. While on the street on August 7, 1940, deceased suffered a second cerebral hemorrhage from which he died before medical aid could reach him.

Respondent claims that on July 27, 1940, he became the possessor by gift *causa mortis* of all of the bank books and securities in controversy. The proof offered consisted solely of that of respondent's witnesses since his claim was dismissed at the close of his case. The proof given by these witnesses is a report of reputed oral declarations of deceased plus the single fact testified to only by the wife of respondent that she saw respondent leave the room of deceased with an envelope in which later she saw the property in controversy. The wife of respondent testified that on July 27, 1940, ten days after deceased had discharged his doctor, he said he felt somewhat ill while seated in a chair on the lawn in front of respondent's residence. She says that at the request of deceased she helped him into his room on the ground floor of the house and aided him to lie down in the bed where it was his custom to rest at intervals during the day. She says she offered to remove his shoes and clothing but that deceased insisted that she put only a cloth underneath his shoes so that the bed coverings would not be soiled. Her story goes on to the effect that after so aiding deceased she mentioned the fact of deceased's condition to her husband who then

entered deceased's room and later, after an hour, emerged with the envelope to which reference has been made already. Nothing of what occurred in the room is reported by any witness. The account given by the wife of respondent continues to the effect that later and after her husband had left the building to go to work she re-entered deceased's room where the latter made some comment about the weather and the burden upon respondent of being compelled to work in such conditions and then (she says) said that he had " taken care of respondent for a long time." This is all the witness said on direct examination but when given the opportunity by the cross-examiner she amplified her report by adding what she had theretofore omitted — a reference to bank books and bonds without further particularization.

The proof of respondent further includes a supposed commentary by deceased at the dinner table on the next day, July 28, 1940, made to the sister of respondent's wife who with her husband is said to have visited respondent and his wife on that day. At the dinner table, and earlier in a talk on the lawn with the sister's husband, deceased again is quoted as having said that he had " taken care of " respondent " for a long time." The sister's husband reports the talk of deceased as referring to bank books and securities without particularization.

The proof shows beyond question that if deceased had any temporary weakness from the heat of July 27, 1940, he fully recovered therefrom. He resumed the standard course of life which he had theretofore pursued both before and after he discharged his doctor. The medical testimony showed that he had recuperated from the original hemorrhage to the point where he was able to walk about with the aid of a cane and to use his theretofore helpless arm in respect of all but the movements of the fingers such as would be required in buttoning clothing. He was able to and did feed himself. He could light and manage a cigar and could get in and out of the house and attend to his usual needs.

In the whole of the period of his convalescence he spoke of his devotion to his work in the school, of his intention to return to it and of the fact that he could improve his retirement privileges materially by serving an additional year. On Sunday, July 28, 1940, he is quoted by the witnesses to his supposed declarations of gift as having expressed the same intention to return to his work when the school session resumed. From and after the 28th of July, 1940, whatever of distress had been experienced by deceased because of the heat of July 27, 1940, was completely forgotten and deceased pursued his usual daily program which included walks about the house and lawn and within a limited area adjacent to

the home of respondent. It was while on one of these walks that he suffered the second hemorrhage which caused his death. The medical testimony clearly establishes that the cause of death was this second hemorrhage and nothing else though of course the predisposing condition of his blood vessels undoubtedly existed throughout a period antedating the first cerebral hemorrhage which caused his hospitalization in the spring of 1940 and continued to death.

The precise question is whether a gift *causa mortis* was established by this body of proof. It should be noted once more that no testimony has been given respecting the actual transaction between deceased and respondent. There is on the record, however, a characterization of that transaction by which respondent is bound. He declared in his bill of particulars, as an amplification of his pleading which claimed a gift, that the form of transaction between him and deceased was not that of gift *inter vivos* but was that of a gift *causa mortis*. There is a vital difference between the two classes of gift. That difference is stated cogently in *Ridden* v. *Thrall* (125 N. Y. 572, 579) where the court says: " In the case of gifts *inter vivos* the moment the gift is thus consummated it becomes absolute and irrevocable. But in the case of gifts *causa mortis* more is needed. The gift must be made under the apprehension of death from some present disease or some other impending peril, and it becomes void by recovery from the disease or escape from the peril. It is also revocable at any time by the donor, and becomes void by the death of the donee in the lifetime of the donor." In its essential characteristics a gift *causa mortis* is a substitute for a testamentary disposition of property. It becomes effective only upon the death of the donor. It is revoked automatically when the conditions which make it possible cease to exist.

The entire testimony respecting declarations of deceased is consistent only with the idea of a gift *inter vivos*. Since the respondent concedes by his bill of particulars that no such gift was made it is necessary to assume that either deceased (if he spoke to the witnesses at all) was speaking of some transaction other than the transaction which respondent alleges or that the witnesses have omitted some vital part of deceased's statements or that deceased reported the transaction contrary to the fact. A claim of gift *inter vivos* — an absolute gift — would create obstacles no doubt envisaged by respondent before he signed his bill of particulars. He could not have expected belief in a story that this deceased (unwilling to pay even for weekly visits of a doctor) had parted absolutely with thousands of dollars worth of the property which he so highly

prized. Such a transaction was demonstrably so out of character that respondent did not allege it.

The asserted gift *causa mortis* must be measured against the tests established by the cases. The proof shows that deceased did not apprehend death at any time except that like the rest of humanity he knew that some day he would have to die. So far from believing on July 27, 1940, that he was soon to die he was then and thereafter planning resumption of his active work in the school with an eye to the greater retirement benefit which that added service would give to him. In his case this was not a pretense such as is sometimes indulged in by persons who know they soon must die. His were genuine plans. He was so confident of life and so little apprehensive of death that the sums (trifling to a man of his resources) which he had to pay for a weekly visit of a physician were too great a burden upon his thrifty nature. To one so sure of life as he such payments were a waste. He was so confident of life that even while treated by his local physician he disregarded the limitations which that physician put upon his activities. He did so deliberately and with expressions of confidence in his own powers and in his capacity to do the things which in fact he did though cautioned against the doing of them by his physician. There is here no illness existing on July 27, 1940, from which death ensued. There is here no apprehension on July 27, 1940, of impending death which furnished motivation and basis for a gift *causa mortis*. There is here wholly lacking any proof of a gift *causa mortis*. If any dialectic could, from a temporary discomfort and weakness due to excessive heat, spell out an illness on July 27, 1940, which would support a gift *causa mortis* then such gift was revoked as matter of law by the recovery from that evanescent illness which is established beyond possibility of contradiction. When deceased lay down to rest on July 27, 1940, and refused to have his shoes removed he did not thereby evince a desire or expectation to die with his boots on but on the contrary an expectation to resume, as he did that very day, his usual routine of life without the trouble of putting on his shoes again. Deceased's death on August 7, 1940, had no relation to his condition on July 27, 1940, any more than it had relation to his condition on July 17, 1940, when he discharged his physician. It was due only to a general arterial deterioration in respect of which deceased felt no apprehension of early death. It was caused, as the medical testimony shows, by a second break in a blood vessel in deceased's brain as unpredictable in medical opinion and as unexpected by deceased as was the first break. The second break was an accident just as was the first. The brevity of the interval between the date of the

alleged gift and the date of actual death was purely fortuitous. The medical testimony shows that deceased might well have lived and worked for years as he obviously hoped and expected to do.

The quoted excerpt from *Ridden* v. *Thrall* (*supra*) states the essential element which is here lacking. To repeat: " But in the case of gifts *causa mortis* more is needed. The gift *must be made under the apprehension of death from some present disease or some other impending peril* * * *." (Emphasis supplied.) The rule thus stated is a reiteration of the rule stated by the General Term of the Supreme Court in *Irish* v. *Nutting* (47 Barb. 370, 387). That court said: " In short, a vague and general impression that death may occur from those casualties which attend all human affairs, but which are still too remote and uncertain to be regarded as objects of present contemplation and apprehended danger, is not sufficient to sustain such a gift as the one which is claimed in this case. *The party must be in a condition to fear approaching death from a proximate and impending peril, or from illness preceding expected dissolution.*" (Emphasis supplied.)

" A man with a chronic disease may be afflicted for years with his disorder, and may well know and consider that he never will recover; and yet a gift made while he is going about his usual and daily occupations could not be considered as made during his last illness, although he might die within the next twenty-four hours. A man having the heart disease severely is usually in imminent peril of death, and still performs all the avocations of a well man; yet a gift made by him as a *donatio mortis causa* would not be valid though he were stricken and die within the next three minutes, unless, *at the time of the gift, he had clear premonition of his approaching death.*" (Emphasis supplied.) (Thornton on Gifts, p. 42.) This statement of the rule was approved in *Butler* v. *Sherwood* (114 Misc. 483; affd., 196 App. Div. 603; affd., 233 N. Y. 655.) Pomeroy comments on *Irish* v. *Nutting* (*supra*), with approval and restates the rule, saying: " If such gifts [gifts by persons apprehending *future* not present perils] were valid as *donatios causa mortis*, on the same ground gifts made at any time by persons having a chronic disease, although in no immediate danger, would be equally good, because their lives are more likely to be shortened than those of persons in health." (3 Pomeroy, Equity Jurisprudence [4th ed.], pp. 2653, 2654.)

The necessity for the existence of an immediate and present apprehension of impending death or impending peril is made clear in the Minnesota case of *Stradcutter* v. *Stradcutter* (151 Minn. 80, 82; 185 N. W. 1016). There a young man was about to go to Europe as a part of the American Expeditionary Force in the

World war. He actually died from battle wounds. Before leaving this country he sought to make a gift *causa mortis*. The court said: " This was not a valid gift *causa mortis*, for the reason that *Frank was not in a situation in which it was possible for him to make a gift of that kind*. He was a young single man, in good health, in no peril from which he could reasonably anticipate that his death was near. A vague and general fear that death may occur from some uncertain cause in the future is not sufficient. Frank had ample opportunity to make a will in the regular and ordinary way. *It is clear that the gift was made under no present peril of death*." (Emphasis supplied.)

To the same effect see *Sheegog* v. *Perkins* (63 Tenn. 273, 280); *Simpkins* v. *Old Colony Trust Co.* (254 Mass. 576; 151 N. E. 87, 89); *Kirk* v. *McCusker* (3 Misc. 277); *Langworthy* v. *Crissey* (10 id. 450; affd., 92 Hun, 608); *Taylor* v. *Harmison* (79 Ill. App. 380, 382; affd., 179 Ill. 137; 53 N. E. 584). The effect of the cited cases is to establish beyond peradventure that in this State there must *coexist* the objective existence of a present illness or an apprehended peril *with the subjective belief on the part of the donor that he is close to death*. The existence of the actual peril from illness or external cause is not enough. There must be the further motivation of the gift based upon an actual present apprehension of death on the part of the giver.

Respondent's proof demonstrated that the basic preconditions for a gift *causa mortis* were lacking. The court was not warranted in permitting a jury to speculate in this state of the proof.

Comment should be made briefly on the fact that respondent had possession of the subject-matter in controversy. It was part of his proof that deceased took to respondent's home all of his readily movable belongings when he left the living quarters to which he expected not to return. Respondent had full access (especially after the death of deceased) to all of deceased's securities and papers. He actually delivered them in escrow only when in the custody of the sheriff who had seized them under a commitment issued when respondent defaulted in appearance after service of the discovery order. In these circumstances his possession of the property in controversy adds nothing to his claim. (*Matter of Canfield*, 176 App. Div. 554.)

Brief comment, too, should be made on the exclusion of certain tendered evidence. It is the common experience of trial courts to find that claims of gift are presented with three major types of proof. The essential and indispensable proof is that directed to the actual transaction of gift. A second line of proof is almost always offered to show a predisposition toward the alleged donee

by showing friendly relations between him and the donor and at times by showing benefits conferred by the donee on the donor. A third line of proof commonly offered is that excluded in this hearing. It consists of alleged quotations of deceased's speech derogatory to his now acting legal representative. Such declarations, it is readily perceived, are impossible of denial by the party assailed even though absolutely wanting in truth. This type of proof follows the psychological approach to the trier of the facts and utilizes the smear techique which in recent years has become a standard mechanism in social and political movements. To admit such evidence is to prove nothing of the fact of gift. The admission of it would compel the granting of leave to the persons assailed to show at least contrary declarations of deceased and possibly to show that the derogatory declarations had no basis in fact. Thus there would be imported into a simple issue of gift collateral issues which have in fact no relation thereto. The probability of a jury being misled by such evidence requires that it be excluded. The extent of the prejudice forbids reception of evidence of so little probative force.

The claim of respondent that he is the owner of the property in controversy by reason of gift *causa mortis* on the part of deceased is dismissed. The property in controversy is adjudged to be the property of the estate of deceased. Submit, on notice, decree accordingly.