JAMES P. CRONIN *vs.* CHELSEA SAVINGS BANK, JEREMIAH CRONIN, administrator, claimant.

Suffolk.     December 11, 1908. — February 25, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Gift.   Donatio Causa Mortis.*

A person whose death is expected and impending may make a delivery of a draft on a bank in a foreign country, which he has deposited in a savings bank here for collection, by indorsing and delivering into the hand of a donee the instrument in writing given to him by the savings bank acknowledging the receipt of the draft for collection, and, where there also is shown an intention to make an immediate gift, followed by death without revocation, the transaction can be found to constitute a valid gift as a *donatio causa mortis.*

The owner of a draft on a bank in a foreign country, who has deposited it in a bank here for collection, taking from the bank an instrument in writing acknowledging the receipt of the draft for collection, has an interest in the draft or its proceeds which is capable of delivery by means of the receipt and therefore can be made the subject of a *donatio causa mortis.*

MORTON, J.   This is an action of contract brought to recover from the defendant bank the proceeds of a draft drawn on the National Bank, Limited, of Cahirciveen, Ireland, in favor of one Ellen Sullivan, now deceased.   The draft was deposited by Ellen Sullivan with the defendant bank for collection on April 3, 1906, and the bank gave her the following receipt: " Chelsea, Mass., April 3, 1906.   Received from Ellen Sullivan for collection Draft #21615 for £199 by Nat'l Bank Limited of Cahirciveen Ireland   Dated Oct. 24, 1904.   Chelsea Savings Bank per R."

Ellen Sullivan died a few days later on April 8.   On April 6 she was informed by the doctors and by the clergyman who attended her that her end was approaching.   The last rites of the church were administered to her about four o'clock, and about seven o'clock she called the plaintiff to her and discussed with him the place where she wished to be

buried and other matters relating to the burial. She told him that she wished him to have the money, and handed the receipt to him saying "You better take this check," and he said "All right." She told him to pay for her burial and a head stone and to pay her bills and to keep the rest for himself. The plaintiff then said to her "Aunt Nell this (meaning the receipt) is no use to me unless you make it payable to me." Thereupon she indorsed it as follows:

                                              her
"Pay this to James P. Cronin    Ellen × Sullivan.    Witness to
                                             mark
mark Minnie A. Cronin"

and delivered it to him. She came to this country in November, 1904, and, with the exception of the week following her arrival, lived with the plaintiff till her death and was buried from his home in accordance with the instructions which she had given him. She died on Sunday and before her death told the visiting clergyman that she had given her money to the plaintiff.

After the draft had been collected by the defendant, demand was duly made by the plaintiff on the defendant for the proceeds, and the defendant refused to pay over such proceeds to him. Thereupon this action was brought. The administrator of the estate of Ellen Sullivan was admitted as a claimant, and, at the close of the plaintiff's evidence, the presiding judge ruled that the plaintiff was not entitled to the money and ordered a verdict for the claimant. The case is here on exceptions by the plaintiff to this ruling and direction.

We think that there was evidence warranting a finding of a *donatio causa mortis*, and that the case should have been submitted to the jury. There can be no doubt, we think, that, if there was evidence warranting the finding of a valid delivery, all of the other things necessary to constitute a *donatio causa mortis* could have been found to be present, — expected and impending death, an intention to pass the title then and there, and no revocation of the gift before death. We think that there was evidence, which, if believed, warranted a finding that there was a sufficient delivery. The deceased did not have the draft itself, and she could not, therefore, deliver that. The only voucher for and evidence of title to the draft and its proceeds

which she had was the receipt which had been given to her by the savings bank. This represented, or at least could have been found to represent, the draft and its proceeds when collected, and to have been so intended by the parties, even though it did not contain the words " to be accounted for when collected," or words of similar import. Not only was manual possession of the receipt given to the plaintiff by the deceased, but it was assigned to him by an indorsement on the back for the purpose, as it could have been found, of transferring to him the property which it represented. Unless, therefore, the interest was one incapable of delivery and consequently one which could not be made the subject of a *donatio causa mortis* there would seem to have been ample evidence of a *donatio causa mortis*. We do not think that the interest was incapable of delivery any more than the interest represented by a deposit in a savings bank which a delivery of the book, without an assignment, if done with the intention to convey the title, is sufficient to pass. *Pierce* v. *Boston Five Cents Savings Bank*, 129 Mass. 425. The delivery was the best possible one under the circumstances. The case is not one of a gift of the donor's own check. The indorsement on the receipt was, or could have been found to be, simply for the purpose of perfecting the gift of the draft and its proceeds. See *Moore* v. *Darton*, 4 DeG. & Sm. 517 ; *In re Dillon*, [1890] 44 Ch. D. 76.

*Exceptions sustained.*

The case was submitted on briefs.

*C. H. Cronin & J. F. Cronin*, for the plaintiff.

*P. B. Kiernan*, for the claimant.