### LILLIAN M. GLOVER *vs.* WALTHAM LAUNDRY COMPANY & others.

Suffolk.   December 5, 1919. — March 30, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Equity Pleading and Practice,* Appeal, Master.   *Partnership,* What constitutes. *Trust,* Resulting.   *Husband and Wife.*   *Corporation,* Resulting trust in shares issued upon incorporation.   *Equity Jurisdiction,* Estoppel, Laches, Statute of limitations, To enforce resulting trust.

Upon an appeal from a final decree entered in a suit in equity by order of a single justice who had heard the suit solely upon the report of a master which did not contain a report of the evidence, this court, with reference to the facts found by the master and the power and duty to draw inferences therefrom, stand as did the single justice, unaffected by conclusions reached by him.

Upon an appeal from a decree in a suit in equity entered by order of a single justice who had heard the suit solely upon the report of a master which did not contain a report of the evidence, the facts found by the master must be taken as true unless upon the face of his report they are mutually inconsistent or contradictory and plainly wrong.

A master, who heard a suit in equity in which it was necessary to determine the nature of a business relationship between a certain man and the proprietor of a laundry, found that the man was not a partner in the business and had no interest therein except as an employee.   He also found that the man had some customers of his own, whom he brought to the proprietor of the business, that he worked in part on a commission basis, that he induced the proprietor to adopt a trade name signifying a partnership in order that he might represent himself as a partner, that he lent small sums of money to the proprietor and borrowed money from him and that he also drew money in excess of what was due to him, all of which he repaid.   *Held,* that the subsidiary facts found by the master were not incompatible with the main finding that the man was not a partner in the business.

A master, to whom was referred a suit in equity by a woman against the executor of the will of her husband to have shares of stock in a corporation, issued to the husband and a nominee of his, impressed with a resulting trust in her favor, found that, before their marriage, the man, who was without substantial financial resources and was employed by the proprietor of a laundry, conducted negotiations which resulted in the execution by the proprietor, in September of a certain year, of a bill of sale of the goods and chattels of the laundry business to the plaintiff, who then lived in the same house with the man, and the delivery of that instrument to the man.   Immediately thereafter the plaintiff, at the laundry and in the presence of the man and of the former proprietor, declared that she was the owner of the laundry and that she took possession of

it. She then had several hundred dollars in a bank. The consideration for the purchase was $3,000, to be paid in cash. No payment was made until the following February, when the proprietor was given eight promissory notes, each for $250, made by the plaintiff and indorsed by the man, and $761.67 in cash, which was withdrawn from the laundry business, and a debt of $238.33 from the former proprietor to the man was discharged. The notes subsequently were paid from the profits of the business. Books of account were opened in the name of the man. In August, the man purchased real estate in his own name, to which the laundry was moved and where it was conducted in the name of the man. He and the plaintiff were married the next year. The master without a report of the evidence found that in all the transactions the man acted as the agent of the plaintiff. *Held,* that

(1) The subsidiary findings of the master were not incompatible with the finding that the man was acting as the plaintiff's agent;

(2) It must be taken as a fact that the business was purchased by the plaintiff;

(3) The circumstance that a part of the purchase price was furnished by the man through the discharge of the debt owed to him by the former proprietor did not cut down the effect of the main finding that the title passed to the plaintiff.

The master in the suit above described further found that, for eight years after the purchase of the business by the plaintiff, her husband with her acquiescence carried on the business as though it were his own, that there was no actual gift nor transfer of the business by her to him and that from time to time she claimed it as her own; that then, with the full knowledge and acquiescence of the plaintiff, he caused a Massachusetts corporation to be formed to which he gave a bill of sale of the business in his own name in return for two hundred shares of stock, one of which was given to the plaintiff, who became a director, one to a nominee of his and the remaining shares to himself; that some property owned by the husband in an outside venture was included in the conveyance to the corporation and formed part of the consideration for the issue of shares, but that that property was valueless because the venture was a failure; that the husband continued to manage the business until his death three years later; that no dividends ever were declared, although he received as profits more than $27,000 and the plaintiff received several thousand dollars. Very shortly after the husband's death the plaintiff asserted her claim to the executor of his will, and within three years brought this suit. *Held,* that

(1) The identity of the shares of stock, standing in the name of the plaintiff's husband and of his nominee, as representing what previously was her property, was established;

(2) The circumstance that property of the husband in an outside venture, which proved valueless, was part of the consideration for the shares issued to him was of no consequence;

(3) Since the defendant executor stood in the same position as had the plaintiff's husband, to whom her property had been entrusted and who was in no way deceived by her conduct, the plaintiff was not estopped to assert her claim in this suit;

(4) In the absence of any finding that the rights of any creditor of the business, either before or after the incorporation, were placed in jeopardy, the plaintiff was not estopped to assert her claim by reason of her having permitted her husband to hold himself out as the owner of the business;

(5) It not appearing that there had been any delay on the part of the plain-

tiff which had caused her husband or the executor of his will to sleep on his rights, the suit was not barred by laches;

(6) The suit was not barred by the statute of limitations;

(7) A decree should be entered directing that the shares of stock in the corporation which had stood in the name of the husband and his nominee should be conveyed to the plaintiff, and that there should be an accounting to her for dividends received thereon.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 5, 1912, and afterwards amended, against the Waltham Laundry Company, a Massachusetts corporation, Samuel D. Elmore, executor of the will of Clarence F. Glover, late of Waltham, and Seymour Glover, seeking in substance to impress with a trust one hundred and ninety-eight shares of the capital stock of the defendant corporation issued to Clarence F. Glover and held by the defendant Elmore as the executor of his will, and one share issued to the defendant Glover, and to compel their transfer to the plaintiff, who alleged that they were issued in payment for a laundry business owned by her and sold by her to the corporation.

The defendants severally filed, in the same documents, demurrers, and answers which stated expressly that they did not waive the demurrers. The grounds of the demurrers were, in substance, want of equity, multifariousness, misjoinder of parties, inconsistency of allegations and of relief asked for, and that the plaintiff had plain, adequate and complete remedies at common law and in the Probate Court.

The demurrers were heard by *Hammond,* J., who filed the following memorandum: "I am of the opinion that many of the questions raised by the demurrers can be better considered at the hearing on the merits. The demurrers are accordingly overruled without prejudice to the right of the defendants to raise the questions at the hearing upon the merits."

No interlocutory decree was entered in accordance with the foregoing order and no appeal from the order was claimed.

The answers of the defendants admitted that on January 26, 1911, the defendant Elmore wrote to the attorney for the plaintiff a letter reading as follows: "Permit me to assure you that as Executor named in the will of Clarence F. Glover, I shall be ever ready to acknowledge the fact that Mrs. Glover, very shortly after Mr. Glover's death, informed me that she had a claim upon the Waltham Laundry property, asserting that it belonged to her-

self. Such being the fact I, as such Executor, should never feel justified, and should not at any time in the future undertake to take any advantage of any failure on her part to assert her claim, whatever it may be, to the same by legal proceedings during the time which has elapsed or is to elapse while the controversy regarding the probate of Mr. Glover's will continues."

The suit was referred to a master. The material findings of the master, who did not report the evidence, are described in the opinion. All parties filed objections and exceptions to the master's report. The plaintiff afterwards waived her exceptions. The defendants' exceptions were heard by *Crosby*, J., who made the following memorandum:

"1. The plaintiff's exceptions were waived in open court. The defendants' exceptions were overruled and an interlocutory decree is to be entered confirming the report.

"2. I find, as an inference of fact from the facts found and reported by the master, that the plaintiff has not sustained the allegations of the bill and therefore cannot recover. A final decree is to be entered dismissing the bill with costs."

Interlocutory and final decrees were entered in accordance with the order of the single justice. The defendants appealed from the interlocutory decree and the plaintiff from the final decree.

*R. Spring*, (*F. M. Carroll* with him,) for the plaintiff.

*E. R. Anderson*, (*S. D. Elmore* with him,) for the defendants.

*F. C. Allen*, for the defendant Glover, submitted a brief.

RUGG, C. J. This is a suit in equity brought by the widow of Clarence F. Glover against the executor of his will and others in substance seeking to impress with a trust in her favor shares of stock in a corporation known as the Waltham Laundry Company.

This case has been referred to a master, was heard upon the master's report alone by the single justice, and comes before us on appeal from a final decree entered by him. This court stands with reference to the facts found and the power and duty to draw inferences as did the single justice, unaffected by the conclusion reached by him. Where findings and inferences rest upon the observation of witnesses who have testified orally, the appellate court does not reverse unless plainly wrong; but where the facts all are documentary or are in a master's report, then this court

on appeal has the same functions as a single justice and draws the proper inferences for itself. *Rioux* v. *Cronin,* 222 Mass. 131, 134. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. *Dominion Trust Co.* v. *New York Life Ins. Co.* [1919] A. C. 254, 257. *Bacon* v. *Abbott,* 137 Mass. 397, 399. *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 200.

The evidence is not reported. Therefore the facts found by the master must stand unless upon the face of his report they are mutually inconsistent or contradictory and plainly wrong. *Crane* v. *Brooks,* 189 Mass. 228. *Young* v. *Winkley,* 191 Mass. 570, 573.

The master found that in 1897 the deceased, Clarence F. Glover, having had some experience in the laundry business, went to work for one Simes, who was conducting a laundry in Waltham, for a weekly salary and a commission and continued in this employment until September 22, 1898. The deceased then was without substantial financial resources. He lived in the same house with the plaintiff, at that time unmarried, who had several hundred dollars in the bank. The master found that the deceased was not in fact a partner with Simes and had no interest in the business except as employee. This finding is quite consistent with the other findings and appears to be the rational inference from the general relation of the parties. Although the deceased had some customers of his own, whom he brought to Simes, worked in part on a commission basis, induced Simes to adopt the trade name of Frank Simes and Company so that he could represent himself as partner to the knowledge of Simes, lent small sums of money to Simes and borrowed from him and drew money in excess of the amount due him, all of which were repaid by each debtor, these facts are not incompatible with the main finding that the deceased was not a partner with Simes.

On September 22, 1898, Simes executed and delivered to the deceased a bill of sale running to the plaintiff of the goods and chattels of his laundry business. The negotiations for this purchase were conducted by the deceased on the plaintiff's behalf and on the day on which the bill of sale was delivered, or the day after, the plaintiff went to the place where the laundry business was carried on and in the presence of Simes and the deceased declared that she was the owner of the laundry and that she took

possession of it. The consideration for the purchase was agreed to be $3,000, to be paid in cash. It was not paid until February, 1899, when eight promissory notes, each for $250, were made by the plaintiff, indorsed by the deceased to the order of, and delivered to, the attorney for Simes. The remaining $1,000 of the purchase price was paid by the sum of $761.67 in cash withdrawn from the laundry business and by the cancellation of $238.33 of indebtedness from Simes to the deceased. The notes subsequently were paid in whole or in part out of the profits of the laundry. The laundry business was conducted by the deceased, under the name of "Clarence F. Glover doing business as C. F. Glover & Co." and "Waltham Laundry, C. F. Glover & Co. Props.," until 1906. The plaintiff and the deceased were married in 1900 and lived together until his death in 1909. Books of account were opened in the name of the deceased. In August, 1899, he bought real estate to which the laundry was moved and upon which the business was conducted thereafter.

There is no incompatibility with other facts found in this finding that the deceased acted for the plaintiff and in her behalf in negotiating for her the purchase of the personal property on September 22. That finding means that the deceased negotiated the purchase of the chattels as agent for the plaintiff, who was the purchaser. The plaintiff at that time was possessed of some property; the deceased was worth substantially nothing. She was responsible for the purchase price. She was the maker of notes aggregating two thirds of that price. Most of the cash paid was withdrawn from the profits of the business. The fact that she was named in the bill of sale as the vendee and took possession of the property in person in the presence of the vendor and of the deceased, and was maker of the notes, are facts of dominating significance in determining who was the purchaser. There is nothing inherently repugnant to the fact that she was in truth the purchaser and the owner of the business in the subsequent conduct of the deceased with reference to the property and business, he being her husband for the larger part of the time. It is not necessary further to review the findings of the master in this particular. See *Briggs* v. *Sanford,* 219 Mass. 572, and *Hutchins* v. *Mead,* 220 Mass. 348.

The circumstance that a part of the purchase price of the prop-

erty was furnished by the deceased through the discharge of his debt against Simes does not cut down the effect of the main finding that the title passed to the plaintiff. *Patterson* v. *Patterson,* 197 Mass. 112, and cases collected at page 117.

The plaintiff had possession of the bill of sale and introduced it in evidence. The master found that it was delivered to her by the deceased. This finding is not irreconcilable with other facts found. It is in accordance with the presumption of propriety in conduct in the absence of evidence of surreptitious and unlawful appropriation. *Collector of Taxes of Boston* v. *Rising Sun Street Lighting Co.* 229 Mass. 494, 497.

The findings that the business after September 22, 1898, and before October 1 following was conducted by the deceased on behalf of the plaintiff and not for Simes and Company, and that from and after September 23 the receipts and disbursements of the business by the deceased were as agent for the plaintiff, are not repugnant to other facts found but seem to follow naturally from the establishment of the main proposition that the plaintiff was the purchaser of the property by the bill of sale of September, 1898.

It must be taken as a fact that the purchase of the property was by the plaintiff and not by the deceased and that the business was at the first started and carried on by the deceased for the plaintiff. Thereafter, up to 1906 the deceased acted as if he were the owner of the business, and conducted it as though it were his own with the knowledge and acquiescence of the plaintiff, who was familiar in a general way with the books and the way in which he carried on the business. The finding of the master is that there was no actual gift or transfer to the deceased of the plaintiff's right and title to the property and business, and that she claimed from time to time that the business belonged to her. The facts do not show that the plaintiff relinquished her title to the property or the business, or conveyed it in any way to the deceased. Ownership by the plaintiff being once established, the natural inference is that, in the absence of facts showing the contrary, the ownership continued the same. In view of that fact, the acts of the deceased in respect of management and control of the property of his wife presumably were as agent for her and in her interest and behalf. *Chace* v. *Chapin,* 130 Mass. 128. There is no

finding of a gift by the plaintiff to the deceased of the property or business. The facts found do not seem to us to require or support that inference. Indeed, the finding is to the contrary.

In 1906 the Waltham Laundry Company was incorporated under the laws of Massachusetts with a capital of $20,000 divided into two hundred shares. The. deceased brought about the organization and at his invitation the plaintiff, his brother, Seymour Glover, and one Grover acted with him as incorporators, participated in their meeting, and in the election of its officers and in the passage of a vote to purchase "the machinery, merchandise, bills receivable and good will of the laundry and cleansing business heretofore carried on by Clarence F. Glover," and to assume all its contracts, debts and obligations. The deceased executed a bill of sale of the laundry property and business in his own name to the corporation, the terms of which were stated in the plaintiff's presence and hearing. The plaintiff was fully aware of this transfer by the deceased to the corporation and acquiesced therein and made no claim of ownership. She was a director from the organization until the death of the deceased, and knew that one hundred and ninety-eight shares of stock were held by the deceased and one each by Seymour Glover and herself. After the organization of the corporation until the death of her husband he continued to manage the business in substantially the same manner as before. No dividends were declared but profits were paid to the deceased and charged to him on the books of the corporation to an amount exceeding $27,000. During the entire period the plaintiff received from the deceased sums of money to the amount at least of several thousand dollars, the exact amount not being .found. The plaintiff also loaned money to the deceased from time to time.

The facts show that the property purchased by the plaintiff in 1898 and used in her business and increased and enlarged in amount by the management in her behalf up to 1906, is now represented by shares of stock in the corporation. The identity of the stock as representing that which previously was her property is established. *Peoples National Bank* v. *Mulholland,* 228 Mass. 152, 158, and cases there collected. *Lowe* v. *Jones,* 192 Mass. 94, 101. *Newell* v. *Hadley,* 206 Mass. 335, 356. The circumstance that some property owned by the deceased in an out-

side adventure was included in the conveyance to the corporation is of no consequence in this connection, because that business had been a failure and property from this source appears to have been negligible in value. See *Davis* v. *Downer*, 210 Mass. 573, 575.

The plaintiff is not estopped from setting up her claim to the stock. The executor of the deceased stands in no better position than the husband himself would, if living, and as against him she might assert her rights in equity. Manifestly he being the person to whom property was entrusted, could not rightly contend that the plaintiff as owner was thereby foreclosed from asserting her title.

There is no fact which seems to us to justify an inference that the plaintiff's conduct misled the deceased to his harm in any particular. *Plumer* v. *Lord*, 9 Allen, 455. *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286, 291. Facts constituting an estoppel between the original parties are absent. The fundamental fact is that the plaintiff was the original purchaser of the property and that the business in its initial stages was conducted by the deceased in her behalf. This was all with the knowledge of the deceased because he acted as her agent. This knowledge must be held to have stayed with the deceased and to have colored all his transactions respecting the property and business. Thus, as between the plaintiff and the deceased, there has never been any basis for estoppel. Their acts all are affected by their knowledge of facts essentially at variance with the underlying conception of estoppel.

The general trend of authority is that where a wife vests her husband with the title and possession of property and permits him to hold himself out to the world as owner and others give him credit on the strength of this appearance, she is estopped to deny as against such creditors to the extent of their debts that he was the owner. *Rioux* v. *Cronin*, 222 Mass. 131, 135, note, and cases there collected. Doubtless the same rule applies to like conduct of others. *Savage* v. *Darling*, 151 Mass. 5. *Russell* v. *American Bell Telephone Co.* 180 Mass. 467. That principle is not germane to the issues here presented. No creditor is a party to these proceedings. The only finding is that "In at least one instance credit was extended to said Glover in reliance upon

representations by him that the business belonged to him and that the person extending such credit was and is a creditor of the estate of" the deceased. That finding falls short of anything approaching an estoppel to the plaintiff from asserting her title.

The plaintiff is not barred by laches. No facts are found to the effect that during the life of the deceased he failed to recognize as between himself and the plaintiff her rights to the property in such way as justly to satisfy her by payments of money directly to her or expended in her behalf. There does not appear to have been under all the circumstances unreasonable delay operating to the prejudice of the deceased. *Haven* v. *Haven,* 181 Mass. 573, 579. Delay is chiefly of consequence when good faith requires vigilance in asserting one's rights.

Manifestly the facts do not show that the plaintiff's rights have been barred by the statute of limitations. *Davis* v. *Coburn,* 128 Mass. 377.

The taking of the shares of stock in the corporation in the name of the deceased in return for her property conveyed to it presents the usual case of resulting trust. The plaintiff furnished the consideration, the title being taken in the name of the deceased. *Lufkin* v. *Jakeman,* 188 Mass. 528. *Howe* v. *Howe,* 199 Mass. 598. *Cooley* v. *Cooley,* 172 Mass. 476.

The defendant Seymour Glover stands in this connection on the same footing as the deceased. He paid nothing for his share of stock but the entire subscription price therefor was paid by the property of the plaintiff. A trust therefor results in her favor.

The Waltham Laundry Company obtained a clear title to all the property conveyed to it. The plaintiff plainly is estopped to set up any claim against it.

Assuming in favor of the defendants, but without so deciding, that consideration of the demurrer is open on the record, it is sufficient to say that it was overruled rightly. *Fourth National Bank of Boston* v. *Mead,* 214 Mass. 549, is plainly distinguishable.

The result is that the decree dismissing the bill is reversed and a new decree is to be entered establishing the title of the plaintiff by way of resulting trust to the one hundred and ninety-eight shares of stock in the corporation which stood in the name of the deceased and to the one share standing in the name of Seymour

Glover, declaring that these shares are held in trust for her, and directing these shares transferred to her, and ordering an accounting for dividends received thereon, and for her costs.

*So ordered.*