NORA A. SIMPKINS *vs.* OLD COLONY TRUST COMPANY & another.

Suffolk. October 23, November 9, 1925. — February 25, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Gift*, What constitutes. *Safety Deposit Box. Savings Bank. Equity Pleading and Practice*, Master: report; Appeal.

Findings by a master who had heard a suit in equity, stated in a report which did not include a report of evidence, must be accepted as true and must stand as final unless upon the face of the report they are inconsistent or repugnant one to another, and plainly wrong.

An unmarried man, who had been boarding and lodging at the home of a married woman, a libellant in divorce proceedings which were pending, and had promised to marry her when the divorce should be granted, fell sick of a "grippe cold" and was attended by a physician. The second day of his sickness he complained of feeling worse, called for paper and ink, and wrote out what purported to be a will, giving all his property to the woman. The paper bore no witnesses. At the same time he signed an order on a trust company directing it to deliver to the woman the contents of his safety deposit box there, and gave the order and his key to the box to the woman, saying, "This is the key to my safe deposit box. I want you to take it and keep it, and with this

order you can get the contents of the box." He also wrote the names and addresses of a sister and a brother on a piece of paper, and gave that to the woman. He also gave her a pass book in the commercial department of the trust company, and told her that he wanted her to have what was in it. He knew that a will would require witnesses, and he did not request the plaintiff to obtain any. Although he was very sick, he did not refer to his death, and his physicians expected his recovery up to the day before he died, five days after he had acted as above described. A master, to whom was referred a suit in equity by the woman to gain possession of the property in the safety deposit box and the commercial deposit, found the foregoing facts, and also found that there was no gift *causa mortis* or *inter vivos.* *Held,* that

(1) The findings did not require a conclusion as a matter of law that there was an instant handing over of title of the contents of the safety deposit box to the plaintiff;

(2) There was no delivery of the account in the commercial department of the trust company;

(3) The finding by the master, that there was no present gift of any of the property, could not be pronounced wrong.

The mere delivery of a pass book in a bank of issue, discount and deposit does not give a dominion or control over the deposit, and hence does not operate to transfer title to the money deposited.

BILL IN EQUITY, filed in the Superior Court on December 10, 1919, and afterwards amended, to require delivery to the plaintiff of certain personal property, formerly of William F. West and alleged to have been given to the plaintiff before his death.

The suit was referred to a master. Material findings by the master, in a report which did not include a report of evidence, are described in the opinion. The suit was heard by *Wait,* J., upon reports by the master and exceptions thereto, and by the judge's order there were entered an interlocutory decree overruling exceptions to the reports and confirming the reports, and a final decree dismissing the bill. The plaintiff appealed.

*J. C. Johnston,* for the plaintiff, submitted a brief.

*W. H. Irish,* for the defendant.

RUGG, C.J. The plaintiff in this suit in equity seeks to have delivered to her the contents of a safe deposit box, together with the sum of $1,011.89 deposited in the commercial department of the defendant bank. The box was rented and the deposit made by William F. West, who died on September 26, 1919. The defendant admits that

the box contains five books each representing a deposit in a savings bank, one book representing a deposit in the savings department of a trust company, four $50 United States Liberty bonds, and divers trinkets and mementos, and that it has in its bank the commercial deposit referred to, and avers that it is willing to deliver all this property to the rightful owner. The administrator of the estate of West asserts that title to the property is in the estate. The case was referred to a master by an order directing him "to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request."

The master found that the deceased was about fifty-five years of age, and that the plaintiff was about forty-five years of age; that they first met in 1914; that in July, 1919, he went to live at her home, where she supported herself by keeping boarders, and remained until his final illness; that during this time a libel for divorce brought by the plaintiff against her husband was pending, and the plaintiff and West had mutually promised to marry each other when the divorce should be granted; that a decree was not entered in her favor until November, 1919; that the plaintiff bought the house where she lived, that West paid a deposit of $100 as part of the purchase price, and that they intended to make this place their home after their marriage; that when he lived at the plaintiff's house he purchased the food there consumed, and paid $15 a week for room rent.

On September 19, 1919, West complained of illness; on the following day he was attended by a physician who found that he was suffering from a grippe cold; on the next day, which was Sunday, he complained of feeling worse and in the afternoon requested the plaintiff to get him a pad of paper and ink; he then wrote a paper, marked "A," of the following tenor:

"Winthrop Beach, Sept. 22, 1919.

I, William F. West, do hereby of my own free will and accord will to Nora Angela Simpkins, my fiancee, all my personal and real estate.

[Signed] WILLIAM F. WEST."

After West had written this paper he requested the plaintiff to go to his trousers pocket and get a bunch of keys, and find one with the number 1792 on it; this was the key to his safe deposit box in the bank of the defendant, and the intestate removed it from the key ring.   He then wrote this paper:

"1792                    Winthrop Beach, Sept. 22, 1919.
Old Colony Trust Co.

Please deliver to bearer, Mrs. Nora Angela Simpkins, the contents of box 1792.

[Signed] WILLIAM F. WEST."

Upon another undated paper he wrote the name and address of his brother and of his sister.   He then handed to the plaintiff the three papers above described and the key and said: "This is the key to my safe deposit box.  I want you to take it and keep it, and with this order you can get the contents of the box."   He also told her he wanted her to have all of this property; that his brother and sister were "well fixed."   He asked the plaintiff to go to his bureau drawer and obtain a pass book in the commercial department of the defendant company.   She did as requested and he told her that he wanted her to have what was in it.   The plaintiff then placed the papers and the pass book in a bureau drawer in the room occupied by West, and the key in her hand bag.   The originals of the three papers, and key and the pass book were received by her on Sunday, September 21, 1919, although the two papers first mentioned were dated September 22, as there was some doubt of the legality of a paper executed on a Sunday.   The intestate knew that a will would require witnesses and he did not request the plaintiff to obtain any.   He stated to several people before his illness that he wanted the plaintiff to have all his property. Although he was very sick he did not refer to his death, and his physicians expected his recovery up to the day before he died, which was on the Friday following the Sunday on which these events took place.

After the filing of the master's report, at the suggestion of the judge the report was recommitted with a direction to the master "to find as a fact, upon the evidence submitted

to him, whether or not there was any gift by . . . [the intestate] to the plaintiff in this case, and if so, what property was embraced in said gift, and whether said gift was a gift *inter vivos* or a gift *causa mortis*." In the supplemental report filed pursuant to this commitment the master states, "I find that William F. West intended that upon his death all the property in question should go to Nora A. Simpkins, the plaintiff in this action, and to that end prepared the instrument set forth in my original report and marked Exhibit 'A,' but said instrument was insufficient in law to act as a testamentary disposition of said property. Upon all the evidence I find there was no gift, either *inter vivos* or *causa mortis*."

The case is before this court on an appeal from an interlocutory decree overruling the plaintiff's exceptions to the master's report and to his supplemental reports and confirming the reports, and from a final decree dismissing the bill.

The evidence is not reported. The only facts are stated in the master's report. They must be accepted as true and must stand as final unless upon the face of the report they are inconsistent or repugnant one to another and plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *Porter* v. *Spring*, 250 Mass. 83, 84.

The instrument termed "A," in form a will, was ineffective as a will because lacking the required witnesses. It confers no rights whatever on the plaintiff.

There was no gift *causa mortis*. Nothing in the record indicates that the intestate did what he did in present contemplation of the near approach of death. *Parish* v. *Stone*, 14 Pick. 198, 203. *Pierce* v. *Boston Five Cents Savings Bank*, 129 Mass. 425, 433. This is the express finding of the master. It is well supported by his subsidiary findings.

The difficult question is whether the finding that there was no gift *inter vivos* can be supported. This finding must be interpreted in the light of all that occurred before the master. He thought that he had found all the material facts in his original report, so that the question whether there was a gift or not had become a pure question of law. The concluding words of his original report were, "I re-

spectfully report for the consideration of the court as matter of law, whether, upon the facts found, the intestate made a gift of said property to the plaintiff." It was in the face of those concluding words that the case was recommitted to him by the court with a positive direction "to find as a fact, upon the evidence" whether there was a gift. It must be presumed that a master, being an appointee and officer of the court, would follow such an unequivocal mandate as was given in this order of recommittal. It cannot be thought that the master perversely undertook to follow his own first expression in the concluding words of his report already quoted and make a ruling of law on the facts previously reported. It must be assumed that he reviewed all the evidence as it had been presented to him with a genuine purpose to ascertain the fact which by the order of recommitment he was directed expressly to find.

In order to constitute a gift there must be a completely executed transfer. It is not enough for the owner to express an intention to make a gift at some time in the future. *Gerrish* v. *New Bedford Institution for Savings*, 128 Mass. 159, 161. It cannot be said that this finding by the magistrate hearing the witnesses was unreasonable or irreconcilable with other facts found. It may well have been that the master thought on all the evidence that the dominating purpose of the intestate was to make a will giving all his property to the plaintiff, and that he did not intend by anything or by everything done by him instantly to divest himself of his estate. He had at that time no expectation of death in the immediate future. It would be somewhat remarkable for a man fifty-five years old with no apparent ailment except a grippe cold, and with the ordinary expectation of life, to make a present gift of what may have been substantially all his property to a woman who then was the legal wife of another, even though he expected to marry her on her obtaining a divorce pursuant to proceedings pending to that end. Such marriage could not lawfully have been performed under our laws even with most propitious circumstances in less than about eight months. The master may have concluded from the evidence that the intestate was likely to have contemplated his possi-

ble plight under several conceivable contingencies in the near future if all this property at once vested in the plaintiff as a present gift, and to have stopped short of accomplishing that result. The actual intent of the intestate may have been inferable in part from his nature, temperament, foresight and wisdom. The words used by the intestate were not unequivocally those of present gift. The form of the order was not that of present gift. It implied future action on her part. It was in the nature of a power of attorney. It did not comply with the rules of the Old Colony Trust Company and consequently that company refused the plaintiff access to the box and declined to deliver the contents of the box. A dominating purpose on the part of the intestate to make the plaintiff the beneficiary under his will is incompatible with a present gift. That which already has been given away cannot be made the subject of testamentary disposition. The general expressions of benevolent design on the part of the intestate toward the plaintiff indicate rather a testamentary than a donative purpose. All that was said and done is to be regarded together as constituting one transaction. The first act of the intestate was to write and sign the paper which would have been a will of all his estate if properly witnessed. Although knowing the requisites of a will, he took no steps to have the instrument witnessed. The delivery of the key was not accompanied by appropriate words of present transfer of title to the property contained in the safe deposit box. A request to take and keep the key commonly would be more indicative of agency than gift. The order on the bank was in form and substance rather an indication of agency than a present gift and executed transfer of title to the contents of the safe deposit box. The whole incident does not require the conclusion as matter of law that there was an instant handing over of title to the contents of the box to the plaintiff. All that was said and done is more consistent with a generous impulse requiring further future action for its completion on the part of the intestate toward the plaintiff than with a present absolute gift to her. The case at bar is distinguishable from cases like *Debinson* v. *Emmons*, 158 Mass. 592, *Bone* v. *Holmes*,

195 Mass. 495, *Herrick* v. *Dennett,* 203 Mass. 17, and *Mangan* v. *Howard,* 238 Mass. 1. It falls within the class illustrated by *Duryea* v. *Harvey,* 183 Mass. 429, *McGrath* v. *Reynolds,* 116 Mass. 566, and *Mitchell* v. *Weaver,* 242 Mass. 331. The final finding of the master that there was no gift *inter vivos* is not repugnant to any of his specific findings. It must stand.

The facts respecting the pass book on the commercial department of the Old Colony Trust Company are slightly different. The pass book was delivered by the intestate to the plaintiff with the statement that he wanted her to have what was in it. This was not enough to constitute a gift of the deposit. The master's inclusion of this in his general finding was right. The mere delivery of a pass book in a bank of issue, discount and deposit does not give a dominion or control over the deposit, and hence does not operate to transfer title to the money deposited. The book does not control the deposit as the money can be withdrawn from the bank, not by the production of the book but by the depositor's check. Such a pass book is very different in its legal characteristics from a savings bank book as appears from the description of the latter in *Pierce* v. *Boston Five Cents Savings Bank,* 129 Mass. 425, 432. The delivery of the pass book was not sufficient to sustain a gift *inter vivos* of the deposit. *Burrows* v. *Burrows,* 240 Mass. 485, 488. Such is the law of England and that of several other jurisdictions. *Beak* v. *Beak,* L. R. 13 Eq. 489; 41 L. J. Ch. (N. S.) 470; 26 L. T. (N. S.) 281. *M'Gonnell* v. *Murray,* Ir. R. 3 Eq. 460. *Jones* v. *Weakley,* 99 Ala. 441. *Pace* v. *Pace,* 107 Miss. 292. *Thomas* v. *Lewis,* 89 Va. 1. *Wilson* v. *Featherston,* 122 N. C. 747. *Whalen* v. *Milholland,* 89 Md. 199. This conclusion is not at variance with *Cronin* v. *Chelsea Savings Bank,* 201 Mass. 146.

The result is that the finding of the master that there was no present gift of any of the property of the intestate cannot be pronounced wrong.

*Interlocutory and final decrees affirmed.*