WILLIAM V. TRIPP *vs.* THE NATIONAL SHAWMUT BANK OF BOSTON & others.

Suffolk.   December 1, 1927. — May 25, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Sale,* What constitutes, Conditional, Vendor retaining possession.  *Equity Jurisdiction,* To establish title to personal property, To enjoin action at law.  *Evidence,* Extrinsic affecting writing.  *Bona Fide Purchaser. Equity Pleading and Practice,* Master: findings.  *Sales Act.*

No evidence having been reported by a master to whom was referred a suit in equity, and there being no objections or exceptions to his report, and the facts therein found not being inconsistent or repugnant one to another, they must be accepted as true.

The rule, that unambiguous instruments in writing cannot be varied or affected by parol evidence, is not applicable, at the hearing of a suit in equity, to bind a person who is a stranger to the instrument in writing involved and not privy to its parties; such a person is not bound by the terms of the instrument in writing, but may show that it did not express the purpose of the parties to it, and he may offer evidence to vary or contradict its terms.

Under a certain arrangement for demonstrating and advertising purposes between a corporation engaged in selling new automobiles and its salesmen, a car was allotted by the corporation to a certain salesman, who signed a conditional sale contract and notes for it.  It was part of the arrangement that salesmen would not be held for instalment payments, but that they would be met by the corporation; and that the cars allotted to salesmen should be kept under the control of the corporation, which should pay for their maintenance in the business, and should be operated on the highways under dealer's number plates belonging to the corporation, until they should be sold, the salesmen all coöperating under the direction of the sales manager in demonstrating and selling all the cars.  When a car was sold, a new car would be allotted to the salesman concerned on the same terms.  The contract and notes above mentioned were assigned forthwith to a discount corporation whose officers were familiar with the corporation's business methods, and by it were assigned to a bank, which paid value therefor without investigation.  The car, after use for a month by the salesman under the arrangement, was sold to a purchaser who, dealing in good faith with an officer of the corporation and not the salesman, paid the full price for the car and received a bill of sale of it without notice of any defect in his title.  Payments on the note given by the salesman for the car thereafter were defaulted and the bank demanded the car of the purchaser.  In a suit in equity by the purchaser against the bank to determine the

ownership of the car and to restrain the defendant from bringing any suit or action against the plaintiff on account of the car, it was *held,* that

(1) Under the arrangement between the corporation and the salesman, the ordinary rights of a conditional vendee in the car did not pass to the salesman;

(2) The plaintiff was an innocent purchaser for value without notice;

(3) Under G. L. c. 106, § 27, the plaintiff acquired a title to the car which was superior to that of the defendant;

(4) A decree was ordered adjudging the plaintiff owner of the automobile and giving him the relief sought.

BILL IN EQUITY, filed in the Superior Court on December 29, 1926, to determine the ownership of an automobile, to restrain the defendant The National Shawmut Bank of Boston from bringing a suit in equity or action at law against the plaintiff on account of the automobile, and for other relief.

The suit was referred to a master. Exceptions to his report were waived. The suit thereupon was heard upon the master's report by *Bishop,* J., by whose order a final decree was entered confirming the report, adjudging that the defendant The National Shawmut Bank of Boston was the owner of the automobile and that the plaintiff had converted it, and ordering the plaintiff to pay to that defendant damages in the sum of $1,800 for such conversion. The plaintiff appealed.

*A. M. Beale,* for the plaintiff.

*R. H. Holt,* (*J. W. Flood* with him,) for the defendant bank.

RUGG, C.J. This suit involves an inquiry touching the rights of several persons to an automobile. The plaintiff bought the automobile in the usual way of the J. W. Maguire Company, a corporation engaged in the business of selling such automobiles, paying therefor the full price, partly by the transfer of a car owned by him and partly by his check to the order of the Maguire Company, receiving bill of sale and taking possession on March 13, 1926. The plaintiff in this transaction dealt entirely with one Ware, the vice-president and sales manager of the Maguire Company, and had nothing to do with any other of its agents. He at no time knew or came in contact with Hussey, another salesman of the Maguire Company hereafter mentioned. Manifestly the plaintiff

acted in entire good faith and assumed that he had acquired full title to the automobile. He was an innocent purchaser for value without notice of any defect in his title. On February 8, 1926, the Maguire Company had executed a conditional sale contract for the same car to one Hussey, a salesman in its employ, with the usual provision that title was to remain in the seller until paid for in full. The Maguire Company also received an instalment note signed by Hussey. The Maguire Company assigned its interest in this sale contract and the property therein mentioned to the Commonwealth Discount Corporation, which in turn on the day following assigned all its right and interest in the contract and property therein mentioned to the defendant bank. The note mentioned in that conditional sale contract having also been endorsed to the defendant bank, and being overdue and unpaid, the defendant bank demanded the automobile of the plaintiff, who thereupon brought this suit to restrain it from bringing an action against him for conversion of the automobile.

It becomes necessary to state in some detail the nature of the business of the Maguire Company and its dealing with the vendee under the conditional sale contract and the automobile therein described and here in question.

The Maguire Company was a corporation engaged in the business of selling, distributing and dealing in new automobiles of a specified make as distributing agent for the manufacturer, as well as in second hand cars of this and other makes taken in trade for new cars. It urged and induced most of its salesmen to take so called demonstrating cars under a plan whereby each salesman was allotted and received a new car. The design of the plan was to keep upon the road for demonstrating and advertising purposes as many different types and models of bodies and chassis of its cars as possible. Each salesman, upon being allotted a car, made a substantial cash deposit on account with the Maguire Company and signed an instalment note for the balance of the purchase price above the cash deposit, payable to its order, and also signed with it a conditional sale contract for the car. The salesmen were assured by the Maguire Com-

pany that it and not they would meet all instalments of interest on the notes thus signed, that the salesmen would never be held for any instalment payments due on the notes signed by them, and that all reasonable effort would be made to sell demonstration cars allotted to them before substantial deterioration. Upon the sale of such car to a general customer of the Maguire Company, a new car would be allotted to the salesman, a new note and conditional sale contract signed without further deposit in cash, and so on until the salesman should leave the employment of the Maguire Company, when the original cash deposit would be returned less some proper deductions. The sale of a demonstrating car to a customer of the Maguire Company was not confined to the particular salesman to whom it was allotted, but all salesmen coöperated under the sales manager of the Maguire Company in selling and demonstrating all cars, which were directed to be brought to the salesroom from time to time for this purpose and for exhibition. The sales manager also had absolute and unqualified right to turn any demonstrating car, to whomsoever allotted, over to any salesman for demonstration or sale. The Maguire Company gave to salesmen, at least as often as two or three times a week, names and addresses of prospective customers upon whom they were expected to call and concerning whom they were required to make reports. It directed the loan of demonstrating cars to prospective purchasers over weekends or holidays. It kept a check on the mileage and condition of such cars. It gave directions to salesmen as to territory, distances and manner in which they could run the demonstrating cars. It also determined when and for what price such cars should be sold. The salesman who actually made the sale of a demonstrating car received the commission due for such sale whether that car had been allotted to him or to some other salesman. None of the demonstrating cars were ever at any time registered in the name of any salesman, and until sold were always operated on highways under the dealer's number plates belonging to the Maguire Company.

Hussey had been in the employ of the Maguire Company and on February 15, 1925, first consented to work under its

plan just described.   On that day he was allotted a new car
for demonstrating purposes and made a cash deposit of
$1,050 with the Maguire Company and signed an instalment
note and conditional sale contract as heretofore described.
This car was sold in May, 1925, and Hussey was allotted
another car.   He made no new cash deposit, but signed
another instalment note and conditional sale contract with
respect to his second car.   This second car was sold in
September, 1925, and a third car was allotted to him.
Again no new cash deposit was made but a new instalment
note and conditional sale contract were signed by him with
respect to his third car.   In February, 1926, this third car
was sold and a fourth car was allotted to him, being the car
here in controversy.   The Maguire Company still retained
the original deposit made by him and owed him a sum in
excess of $2,000 for commissions earned by him during the
year 1925.   Hussey made no further payment to the Maguire
Company and had paid nothing on the prior notes signed by
him or on the prior conditional sale contracts.   As in the case
of each of the three preceding cars, Hussey signed a note
payable in instalments, this one being dated February 8,
1926, for $2,260, and a conditional sale contract with respect
to this car.   Like the three preceding cars allotted to Hussey,
this car was never registered in his name or in any other name
until sold to the plaintiff, but when in use was operated under
the dealer's number plate of the Maguire Company.   After
this car was allotted to Hussey and after he had signed the
note and conditional sale contract, he drove it away and used
it in the business of trying to sell cars of various types for
the Maguire Company.   He frequently left it at the place
of business of the Maguire Company for the use of its other
salesmen.   If he had desired, he could have stored it without
expense to him, when not in use, at that place of business; but
he did store it at his own cost in a garage near his own home.
The Maguire Company supplied certain gasoline and oil and
grease each week for this car, as it did for the cars of all its
salesmen.   Hussey paid the other running expenses of the
car and used it when he desired for his own pleasure.   Hussey
signed the note and contract pursuant to the understanding

between him and the Maguire Company that he would not have to make any payments thereon. The conditional sale contract was never recorded anywhere. On the date of the instalment note and conditional sale contract signed by Hussey with respect to this car, the J. W. Maguire Company for value received assigned all its right and interest in the conditional sale contract and the property and note therein mentioned and indorsed the instalment note to the Commonwealth Discount Corporation, whose officers knew all the facts concerning the method of business between the Maguire Company, Hussey, and its other salesmen, and its understanding with him and them that they would not be held for instalments on the note. Some of its officers were also officers of the Maguire Company. On February 9, 1926, the Commonwealth Discount Corporation similarly assigned to the defendant bank the conditional sale contract and indorsed to the defendant bank the instalment note signed by Hussey waiving demand, notice and protest, and the bank paid therefor by credit to the account of the Commonwealth Discount Corporation. The course of business between the Commonwealth Discount Corporation and the defendant bank with reference to the conditional sale contract and note made by Hussey, following that in similar transactions, was that the defendant bank made no investigation as to the maker of the note, his credit, business or place of business, the manner or form in which the automobile was registered, or the place where it was kept, but paid value therefor and looked to the Commonwealth Discount Corporation in the first place for payment of all instalments due on the note. The defendant bank had no knowledge of the plaintiff or of his dealings with the Maguire Company with respect to the car in question.

Two instalments due upon the note dated February 8, 1926, and signed by Hussey, were paid to the defendant bank by the Commonwealth Discount Corporation, and no other payments have been made by anybody. No part of the original payment made by Hussey to the Maguire Company has been returned to him. The Maguire Company in December, 1925, borrowed from the defendant bank $200,000, giving therefor its demand note for that amount, which was

demanded on April 24, 1926, and on which $62,630.11 was paid. Shortly thereafter the Maguire Company went into bankruptcy.

The case was heard by a master and comes before us on appeal after final decree. No evidence is reported. There are no pending objections or exceptions to the master's report, and no argument against its form or substance has been addressed to us. The facts stated in the master's report must be accepted as true, since they are not inconsistent or. repugnant one to another. *Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576, 580. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. The question to be decided is whether the plaintiff or the defendant bank is entitled to prevail on these now undisputed facts.

As between the Maguire Company and Hussey the conditional sale contract, being a written instrument, fixed the rights of the parties thereto and it could not be varied or affected by parol evidence. *Goldenberg* v. *Taglino*, 218 Mass. 357, 359. *Spevack* v. *Budish*, 238 Mass. 215, 217. *Beacon Tool & Machinery Co.* v. *National Products Manuf. Co.* 252 Mass. 88, 91. But this doctrine is not applicable in actions like the present, one party to which is a stranger to the written instrument and not privy to the parties to it. Such a person is not bound by its terms, but may show that it did not express the purpose of the parties and may vary or contradict its terms. *Kellogg* v. *Tompson*, 142 Mass. 76. *Johnson* v. *Von Scholley*, 218 Mass. 454, 457. *Guaranty Security Corp.* v. *Eastern Steamship Co.* 241 Mass. 120, 123.

The course of business between the Maguire Company and Hussey, as shown by the master's report and already summarized, demonstrates that, as between them, there was no intention and purpose that the ordinary rights of a conditional vendee should pass to Hussey, that no delivery of the automobile should be made to Hussey as the purchaser under a conditional sale contract, that possession of the automobile should not be transferred from the Maguire Company to Hussey in any such sense or manner as to interfere with the right of the former to treat it absolutely and fully as a part of its stock in trade for sale and distribution in accord-

ance with its usual business methods as distributing agent for the manufacturer in selling, distributing and dealing in automobiles of the particular make.   The Maguire Company at all times and for every purpose had possession and control of the automobile to the end of selling it to one of its customers.   It is not necessary to inquire whether there would have been a sufficient delivery to pass title to Hussey in other circumstances, with different relations between the parties, and contrary purposes to be effectuated.   We must deal with the situation as disclosed by all the facts upon this record.   :

Under the arrangement between the Maguire Company and Hussey the latter could do nothing and did nothing. incompatible with this main object of the Maguire Company. The plan of the Maguire Company in establishing this scheme with Hussey and its other salesmen was the better to advertise its business as seller of these cars.   Every end and aim of Hussey in the transaction were in harmony with the main. end and aim of the Maguire Company and in no particular hostile thereto.   The Maguire Company had no lawful right to permit the use of its number plates on the automobile unless owned or controlled by it.   *McDonald* v. *Dundon,* 242 Mass. 229, 231.   Although the form of the conditional sale contract between the Maguire Company and Hussey. by the use of the words "or assigns" in connection with the. vendor might imply in some circumstances that it had a right to transfer its interest in that contract, it is manifest that such was not the intent of the parties.   It would have been contrary to every just expectation of Hussey as shown by the course of business for the Maguire Company to sell its interest in that contract.

Whether, on a nice and technical analysis of its transactions, the Maguire Company be thought to have sold the automobile to Hussey or to the Commonwealth Discount Corporation, it is plain that, in order to enable it to make a sale of the automobile to one of its general customers, it continued at every moment of essential time in actual possession of it until the sale and transfer of its physical custody and possession to the plaintiff.

There was nothing to put the plaintiff on his guard in deal-

ing with the Maguire Company on the footing that it was able to sell and pass clear title to the automobile. His transaction was with a dealer apparently clothed with full power to pass title with respect to a new car never registered in accordance with the requirements of the statutes and seemingly fresh from the manufacturer. See St. 1922, c. 303, § 2. Plainly he was an innocent purchaser for value without notice. *Jeffery* v. *M. W. Leahy & Co.* 258 Mass. 548, 550.

It is provided by G. L. c. 106, § 27, that "If a person having sold goods continues in possession thereof . . . the delivery or transfer by such person, or by an agent acting for him, of the goods . . . under any sale . . . to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery . . . were expressly authorized by the owner of the goods to make the same."

Without emphasizing any of the facts shown by this record above others, but grouping them together and attributing to them their collective force, we are of opinion that the plaintiff acquired title to the automobile and that his right is superior to that of the defendant bank. *Lanfear* v. *Sumner,* 17 Mass. 110. *Halliwell* v. *Trans-States Finance Corp.* 98 N. J. L. 133. *Gump Investment Co.* v. *Jackson,* 142 Va. 190.

The case at bar is distinguishable from *Lynn Morris Plan Co.* v. *Gordon,* 251 Mass. 323. In that case the seller parted wholly with possession at the time of his first sale. The property was later returned to him when he had no interest in it. His possession thus acquired at that time was not that of seller but of an intervening stranger. *Royle* v. *Worcester Buick Co.* 243 Mass. 143, is plainly distinguishable. Although the defendant bank was not required to record the conditional sale contract, St. 1921, c. 233, its rights were subsidiary to those of the plaintiff upon the facts here disclosed. It was at least obliged to take the risk that the conditional sale contract upon which it relies was based upon a genuine transaction with the purpose and effect to make a real transfer of actual possession pursuant to that contract.

The decree is to be reversed and a decree entered embodying paragraph 1 of the former decree with further paragraphs

to the effect that the plaintiff was at the time of bringing the suit the owner of the automobile, that the defendant bank be restrained from bringing any suit or action against the plaintiff on account of this automobile, and that the defendant bank pay to the plaintiff his costs to be taxed as in an action at law.

*Ordered accordingly.*