Henchey, J.
This is an action of tort for conversion of an automobile. With this case was tried a similar action for conversion against a constable who was acting as agent for the Household Outfitting Co., Inc. The same evidence was introduced in both cases.
The Household Outfitting Co., Inc., hereinafter called the Company, is engaged in the retail furniture business in Lynn. The defendant’s answer was a general denial, an allegation that the plaintiff had no title to the chattel involved, an allegation of lack of proper demand, and a further allegation that if the plaintiff has any evidence of title he obtained it by fraud.
*328 One Stockbridge, son-in-law of the plaintiff, owed the defendant Company three hundred and sixty-eight dollars for furniture purchased. This suit was brought for the arrearage, amounting to two hundred dollars. The defendant Company’s attorney secured permission of the proper court to attach, in that suit, the automobile alleged to be owned by Stockbridge. The writ was given to the constable Cordon, with instructions to attach the automobile owned by Stockbridge and to make service’ on him.
On October 17, 1938, the constable Cordon, located the automobile owned by Stockbridge near Stockbridge’s house. He left a keeper in the automobile, entered the house and talked with Stockbridge and his wife, the plaintiff’s daughter. He there learned that Stockbridge bought the automobile on a conditional bill of sale, that there remained one payment of thirty-five dollars which would become due on December 3, 1938. G-ordon then told Stockbridge that he attached his automobile and suggested that he, Stockbridge, and his wife go to the defendant Company’s store. Upon their arrival at the store, Stockbridge and his wife remained outside and Cordon went in, talked to the credit manager, and told him of the one final payment of thirty-five dollárs not yet due on the automobile which he had just attached. Thereafter, Mr. and Mrs. Stock-bridge came into the store' and talked with the credit manager about their account, but no settlement was reached. The Stockbridges then told the plaintiff about the furniture bill and the attachment.
The next day, October 18, 1938, the plaintiff talked with the defendant Company’s credit manager about the Stock-bridge account, but again no settlement was reached. Then, with Mr. and Mrs. Stockbridge, the plaintiff went to the office of the finance company which held the conditional sales contract and explained the situation to the manager. *329 The plaintiff then went to confer with his attorney and immediately returned to the office of the finance company where he paid thirty-five dollars and received from the finance company an assignment, dated October 18, 1938, purporting to transfer to the plaintiff “the within sales agreement and note, without recourse.”
On October 18, 1938, Stockbridge was not in default of payment on the conditional sales contract. The contract runs from one Newhall, the original vendor, to Stockbridge. Newhall assigned the contract to the finance company on April 5,1937. Attached to the bill of sale was a promissory note executed by Stockbridge for the amount due under the conditional bill of sale. Although there was some mixup on the dates of the notes and bill of sale, all parties are agreed that the final payment of thirty-five dollars was not due until December 3, 1938.
The plaintiff testified that at various times prior to the date of the attachment he had advanced substantial sums of money to the Stockbridges, some of which was for making payments due on the automobile in- question. The plaintiff contends that because of these advances and because of an oral agreement with Stockbridge, he had an interest in the automobile. The trial judge found that the plaintiff did make these advances, but ruled that he gained no interest in the car, his only interest being a result of the October 18th assignment from the finance company. The court also found that the plaintiff’s express purpose in making the last payment on the automobile was to attempt to vitiate the attachment in question.
After receiving the assignment from the finance company, the plaintiff notified the defendant .Company; and the constable, Gordon, thereof, made demand for the automobile, which demand was refused. The automobile was then sold by Gordon on an execution in favor of the defendant Com *330 pany against Stockbridge for an amount less than the amount of the execution. On October 19, 1938, the defendant Comapny offered a certified check in the amount of thirty-five dollars to the plaintiff’s attorney and this tender was refused.
The conditional bill of sale contains several provisions, among the more important of which are:
1. Title to the motor vehicle sold thereunder shall remain-vested in the seller until all amounts due are fully paid in money, at which time title shall vest in the buyer.
2. Seller has a right to assign the contract without notice to the buyer.
3. Should any attachment be levied against the buyer or any of his property, or should the seller deem the automobile in danger of confiscation, the seller may declare the entire amount then unpaid immediately due and payable and proceed to collect the balance due with all interest and expenses of collection, and may take possession of said motor vehicle, wherever it may be found, and may enter any premises therefor without notice or demand to the buyer and without legal process.
Neither the finance company nor the plaintiff ever notified Stockbridge or the defendant Company or the constable Cordon, that the amount unpaid was immediately due as a result of the attachment.
The court found that the defendant Company did all within its power to ripen Stockbridge’s title to an absolute title when it tendered to the plaintiff the thirty-five dollars.
At the proper time the plaintiff filed twenty-eight requests for rulings, some of which were denied; and the defendant filed twelve requests, some of which also were denied, but, upon argument, the defendant waives these. *331 The court found that there was no conversion by the defendant. The plaintiff claims to have been aggrieved by the Court’s rulings and refusals to rule and the case was reported here.
Our inquiry seems to be two-fold, viz:
1. Did the constable Gordon properly attach the automobile in question? (The identity of the automobile attached as being the automobile covered by the conditional bill of sale is not questioned.)
2. Has the plaintiff the right to maintain this action? He, of course, must show a right to immediate possession at the time of the bringing of this suit. Newhall vs. Kingsbury, 131 Mass. 445.
First, let us consider if the attachment was proper. An attaching creditor has no greater rights in the attached property than has the person against whom the attachment was made. We must then inquire as to the rights of Stock-bridge in the attached automobile. As between the original vendor and Stockbridge, the respective rights of each are governed by the written agreement under which the automobile was sold and delivered. Hoe vs. Rex Manufacturing Co., 205 Mass. 214. Tripp vs. National Shawmut Bank of Boston, 263 Mass. 505, 511. That agreement provided that title should remain in the seller until the last payment was made. Since the last payment had not been made on the date of the attachment, title at that time was not in Stock-bridge. Now the agreement also provided that the seller may assign the contract without notice. Thus, by an assignment, the validity of which is not disputed, the finance Company succeeded to the rights of the original vendor. This means that, at the time of the attachment, title to the automobile was in the finance company. As conditional vendee, Stockbridge, at the time of the attachment, had a special property in the automobile which he could sell or pledge. Rowe Vending Machine Co., Inc. vs. Morris, 276 *332 Mass. 274; Worcester Morris Plan Co. vs. Mader, 236 Mass. 435; Thomas G. Jewett, Jr. Inc. vs. Keystone Driller Co., 282 Mass. 469; Colella vs. Essex County Acceptance Corporation, 288 Mass. 221; Giligan vs. New England Truck Co., 265 Mass. 51; Marsh vs. S. M. S. Co., 289 Mass. 302; Lawrenson vs. Worcester Lunch Car and Carriage Manufacturing Co., Mass. Adv. Sh. (1938) 1207; Bancroft Steel Co. Inc. vs. Kurnholm Manufacturing Co., Mass. Adv. Sh. (1938) 1361. Under the attachment, the attaching creditor could get no greater rights than had the conditional vendee. Malden Center Garage, Inc. vs. Berkowitz, 269 Mass. 303. In this case the attachment was made upon the automobile as the property of Stockbridge as owner and there was no attempt to attach only that special interest which Stock-bridge had as conditional vendee. It seems to he established that the provisions of Gen. Laws (Ter. Ed.) Chap. 223, §§ 74 and 75 do not apply to property received by a conditional vendee on a conditional sales contract which provided that title to the property is not to pass until the entire purchase price is paid. Malden Center Garage, Inc. vs. Berkowitz, supra. In the Malden Center Garage case it appears at page 305, that the conditional vendee was in default and then the attachment was made. We believe the same rule should apply in a case where the very act of attachment, by the terms of the contract, places the conditional vendee in default and gives the conditional vendor the right to immediate possession. From this, it appears that at least immediately after the attachment, without more, (notice etc. having been waived by the terms of the conditional hill of sale) the finance company was entitled to immediate possession of the automobile. By the attachment and subsequent holding of the automobile after demand, there was an attempt to exercise a control inconsistent with that of the conditional vendor, and a conversion *333 was accomplished. Malden Center Garage, Inc. vs. Berkowitz, supra; Colella vs. Essex County Acceptance Corporation, 288 Mass. 221. Since the attachment was a nullity (there being no attempt, as we have said, to attach the special property which the conditional vendee had in the automobile) see New England Road Machinery Co. vs. Quincy Oil Co., 290 Mass. 242, it follows that the defendant Company acquired no rights in the automobile, thus there were no rights to perfect by its tender of the certified check in the amount of thirty-five dollars to the plaintiff, assignee of the conditional vendor. It is true that by statute, Gen. Laws (Ter. Ed.) Chap. 225, §11, a conditional vendee, under certain circumstances, has the right to redeem, but in the instant case, Stockbridge made no attempt to redeem, and we cannot say that, by an attachment which was a nullity, the defendant Company acquired the right to redeem.
We must, therefore, conclude that Cordon and the defendant Company, for whom Cordon was acting as agent, were guilty of an act of conversion with reference to the automobile in question. While this may seem hard, we must remember that the vendor can recover even from a bona fide purchaser of the vendee. Marsh vs. S. M. S. Co., 282 Mass. 302.
What, then, are the plaintiff’s rights as assignee of the conditional vendor? By the terms of the contract the original vendor1 had the right to assign and in fact did assign. Thus his assignee acquired all his rights under the contract, one of which was the right to assign, without notice to the conditional vendee. It appears then that the plaintiff acquired all the rights of the finance company under the conditional bill of sale, one of which was the right to immediate possession when the property had been attached. Lewis vs. The Club Realty Co., 264 Mass. 588. The *334 plaintiff made demand and was refused. This constituted a violation of the plaintiff’s right to immediate possession and was a conversion. The defendant argues at great length that there was a fraudulent transfer and that the avowed purpose of the plaintiff in paying the thirty-five dollars and in receiving an assignment of the conditional sales contract was to vitiate the attachment. But, as we have seen, there was no valid attachment to be vitiated. Again, suppose for the moment that the assignment was fraudulent, this would mean that it could be avoided by the proper party, namely, a creditor of the conditional vendor. In the instant case, if the assignment was avoided, it would in no way help the defendant, for title would revert to the finance company. We cannot conclude that the assignment was fraudulent, inasmuch as it was for a valuable consideration (the plaintiff paying what the contract was worth to the finance company and being subject to the vendee’s right of redemption) and it in no way took away from the defendant company any rights which it already had before the assignment was made.
For these reasons, we believe the finding of the trial judge to be erroneous and order the case to stand for a new trial. Inasmuch as the report states that it contains all the evidence material to the questions reported, the new trial must he limited to the question of damages.